Drake, Oh. J.,
delivered the opinion of the court:
The petition in this case sets forth three causes of action, all growing out of the same contract, and the defendants file a general demurrer to the petition. The contract as first entered into, and the supplemental one, and certain, letters relied upon, are all subjoined to the petition, so that we have before us, as we suppose, all that is necessary to enable us to decide the questions of law presented by the demurrer.
I. The first cause of action is for the recovery of $70,745.74, which the claimant avers to be due to it, over and above what has been paid to it by the Government; and the question whether the claimant is entitled to any more than was so paid it, upon the facts as set out in the petition, is the point now to be decided. If the claimant is, in our judgment, entitled to more, the demurrer must be overruled ; if not entitled to more, the demurrer must be sustained.
The claimant, by the contract, agreed with the Supervising Architect of the Treasury Department to furnish and deliver at the site of the new post-office building to be erected in the city of New York, granite from the quarries of the claimant on Dix Island, to be used in the construction of said buildiug; and the contract contained a stipulation for the payments to be made to the claimant in the following words:
“The party of the first part hereby covenants and agrees to pay or cause to be paid unto the said party of the second part, or their legal representatives, for the stone so delivered by the party of the second part, in lawful money of the United States, the sum of 65 cents per cubic foot for all stones where the quarried dimensions do not exceed twenty cubic feet in each stone, and one cent additional for every cubic foot of those having such dimensions exceeding twenty feet.”
The controversy is over the meaning of the last sixteen words of that clause, viz, “ and one cent additional for every cubic foot of those having such dimensions exceeding twenty feeV lb is remarkable that at least thre.e different interpretations can be given to those words.
The petition alleges that, under the orders of the Supervising Architect, the claimant furnished a large number of stones, each of quarried dimensions exceeding 20 feet, amounting in the aggregate to 353,728 cubic feet and 7 inches, for which the *629 Government has, upon its construction of those words, paid a sum which is' $70,745.74 less than the claimant holds to be rightfully due. The allegation of the petition is in these words :
“And your petitioners further show that the United States claim aud pretend that said amount is not due to your petitioners because they say by the construction of said contract, as they hold, for every cubic foot in said stone exceeding in dimensions 20 cubic feet, they are only to pay under said contract to your petitioners as many cents per cubic foot beyond 65 cents as there are cubic feet i i said stone exceeding 20 cubic feet; and under said claim the United States have paid to your petitioners for said stone a sum so reckoned only, leaving the aforesaid balance of $70,745.74 now due aud owing to your petitioners according to his contract.”
The difference between the claimant and the Government can best be shown by illustration, taking a stone containing 30 cubic feet as the example.
The claimant’s idea of what should be paid for such a stone is, first, 65 cents for each of the 30 feet; aud, secondly, to add to each of the 30 feet the sum of 30 cents, to meet the contract requirement of “ 1 cent additional for every cubic foot of those having such dimensions exceeding 20 feet.” This would make each of the 30 feet cost 95 cents, and the whole $28.50.
The rule of construction by which the Government paid the claimant was, first, 65 cents for each of the 30 feet; and, secondly, to add 10 cents to each of the 30 feet, as the 1 cent additional on the excess over 20 feet, so that each.of the 30 feet would cost 75 cents, and the whole $22.50.
In the opinion of a majority of the court neither of these constructions is the true one, but that the words in question are satisfied by allowing 1 cent additional for each of the 30 cubic feet, making them each cost 66 cents, and the whole $19.80.
If this be the correct view, then the claimant has been paid on the whole 353,728 cubic feet and 7 inches at the rate of $2.70 more on every 30 cubic feet than the contract required. Of course, then, there is no ground for any claim over and above the amount the claimant has received; and therefore the claimant’s first cause of action is bad, and as to that the demurrer must prevail.
II. The second cause of action is based on the following stipulation in the supplemental contract:
*630 “Any claim heretofore made or presented by the party of the second part for the payment of the cost of shops, sheds, &c., used for the working, dressing, and boxing of the granite, is hereby waived and withdrawn, it being understood that the contract of said party to work, dress, and box the granite implies that they were and are to provide all usual and reasonable facilities for the performance of the work at their own proper cost and expense. It is agreed, however, that if at any time the party of the first part should deem it necessary that a greater number of granite-cutters than one hundred, with a proper proportion of blacksmiths and carpenters, should be employed, temporary shops, sheds, &e., for the accommodation of the additional force, shall be erected by said party of the second part, on the written order and under the direction of the party of the first part.”
The petition alleges that the United States required the employment by the claimant of more than eight hundred granite-cutters, with all the necessary labor for working, boxing, and dressing stone, transporting and delivering the same at the wharves, and freighting the same from Dix Island, and delivering the same in New York; and that the claimant, in order to carry on the work, under the direction of the United States and under the order of the superintendent of the work appointed by the United States, built boarding-houses, sheds, store-houses, and barns; and was forced and obliged, for the purpose of freighting said stone, to build additional wharfage facilities at Dix Island, and also an additional store-house to store the lumber, steel, iron, salt, and other materials furnished by the United States, and for the protection of the same from the weather; and also a market-house or shop in which provisions might be stored and furnished to the men for their support while so employed ; and large boarding-houses in which the men could be lodged and fed; and barns for the cattle employed in hauling the stone; all of which was done with the full knowledge and consent of the officers of the United States, and upon their requirements, and were necessary for the completion of the work in the time required by the Supervising Architect, and were of great benefit and advantage to the United'States; and that all of those buildings and erections have been paid for by the defendants, except the following, which cost the sums set opposite to them, respectively:

*631

For this amount the claimant asks judgment, and we are all of the opinion that the petition does not, in respect thereto, show a cause of action.
By the contract, whatever “ shops, sheds,” &c., might be needed “for (he accommodation of the additional force,” were required to be erected “ on the written order and under the direction of the party of the first part;” and the Supervising Architect of the Treasury Department was the party of the first part. He was the officer whom the contract designated as the one whose “written order” should authorize the erection of those structures; and, to entitle the claimant to recover on account of them, it must be averred that he ordered their erection. It does not meet the requirements of the case for the petition to say that theyAvere built “under the direction of the United States,” or “ under the order of the superintendent of the work appointed by the United States,” or “ with the full knowledge and consent of the officers of the United States, and upon their requirement;” for none of those allegations, nor all put together, necessarily include the Supervising Architect, who was the party to act. For all that appears in the petition, he may never have known that the claimaut had built any of those structures. Certainly it does not appear that he ordered their erection.
In the abseuce of au averment to that effect, the second cause of action is bad, and the demurrer to it is well taken.
III. The third cause of action is for the sum of $14,219.12, which it is averred the claimant lost by the increased cost of the work done by it under the contract, after the 10th of June, 1872, consequent upon a letter — which the petition styles au “order” — written by the Supervising Architect to the claimant on the 8th of June, 1872, as follows:
“I am instructed by the Secretary of the Treasury to request you to give the mechanics and laborers employed by you on the work for- cutting and boxing the granite for the new post-office *632 at New York the benefits of the eight-hour law, from and after the receipt of this letter. The Department does not expect that any reduction will be made in the rates of wages on that account.”
To this letter the.claimant, on the 10th of June, answered as follows:
“ Yours of the 8th is this morning to hand, and, in accordance with your request, have telegraphed to Dix Island and to Charleston to adopt the eight-hour law, which you are aware' causes hn increase in the cost of granite, &e., which certainly should not be borne by us.”
To this the ¡Supervising Architect, on the 12th of June, replied thus:
“Yours of June 10th, notifying me that you have adopted the eight-hour rule at Dix Island and Charleston, is received, for which please accept my thanks.
“ I also note your statement that the cost of the granite will be increased thereby, and that you do not think that it should be borne by you. On this question I do not desire to express my opinion, it being a subject for the consideration of Congress, and not for the Department.”
By the contract the United States were to pay to the claimant “ the full expense and cost of working, dressing, insuring, and boxing the stone,” and the petition alleges that the granite-cutters, dressers, aud boxers of the stone were paid by the United States. They were, therefore, in fact, the employés of the Government, though their labor was engaged aud directed by the claimant; and, as such, they were subject to, and entitled to the benefit of, the Act June 25, 1868, (15 Stat. L.,. 77,) which declared “that eight hours shall constitute a.day’s work for all laborers, workmen, aud mechanics now employed, or who may be hereafter employed, by or on behalf of the Government of the United States.”
The claimant, in entering into this contract, knew, or was bound to know, of the existence of that law, and was bound to understand that it would, or at any rate might, be applied to the workmen who should be employed under the contract. That law was as much a part of the contract as if an express stipulation making it so had been therein inserted. When, therefore, the claimant was requested to give those workmen the benefit of that law, there was no violation of the contract, but,. *633 in effect, a compliance with it. If, thereby, the cost to the claimant of fulfilling the contract was increased, that was only a necessary result of the enforcement of a law, which the claimant was well aware might be enforced, and with reference to the effect of which the contract must be held to have been made. There is, therefore, as we all think, no claim against the Government for the alleged increased cost, resulting from giving the workmen the benefit of the law; and the demurrer to the third cause of action is well taken.
The demurrer is sustained as to all the alleged causes of action.