Mr. Justice Miller
delivered the opinion of the court:
This case, which is brought here by appeal from the Court of Claims, belongs'to a class of demands against the Government originating at Saint Louis in the early days of the late civil war, which, by order of the President, were investigated at that time by a special commission appointed for the purpose. The claim of appellees for the sum of $478,119.02 was examined by that commission. It allowed the sum of $315,008.15 on the demand, and rejected the remainder of $163,111.47.
They accepted the sum so allowed by the commission, gave receipts in full of the accounts included in the demand, and have brought this suit to recover the amount rejected by the commission.
These facts are undisputed, and are part of findings of the Court of Claims in the case. If they stood alone they would bring it within the principles laid down by this court in the case of The United States v. Adams. That case was twice argued before us and affirmed by a full bench, and as we are satisfied with the principles on which it was decided they must govern us in passing on subsequent cases, so far as they fall within its rulings. — (7 Wallace, 463; 9 Wallace, 554.)
But claimants contend that other facts found by the Court of Claims take this case out of the propositions laid down for the government of that case, and entitle them to an affirmance of' the judgment rendered in their favor by the Court of Claims.
*215 An important difference between the two is said to exist in the fact that Adams voluntarily submitted-his claim, to the commission we have mentioned, and the claimants in this case did not. And it is insisted that this submission constituted an important, if not a controlling element in the decision of the Adams ease.
The court in discussing the question of the conclusiveness of a receipt which Adams had given in order to obtain possession of his vouchers, and which he asserted to have been obtained by duress, says: “ In the view we have taken of the case, the giving of the receipt is of no legal importance. The bar to any further legal demand against Government does not rest upon this acquittance, but upon the voluntary submission of the claims to the board 5 the hearing and final decision thereon; the receipt of the vouchers containing the sum or account found due to the claimant, and the acceptance of the payment of that amount under the act of Congress providing therefor.’’
Counsel for claimants, construing the phrase “voluntary submission,” here used, to mean such a submission as would constitute the commission a board of arbitrators, or, at all events, such a submission as would render their decision legally conclusive, deny that the parties in the present case ever made such a submission. As much importance seems to have been given to this question by both parties, an order was obtained from this court on motion of the appellant directing the Court of Claims to make a more specific finding of facts on that subject. Such a supplementary finding is in the present record, and that court says, among other things, that the claimants never were submitted to said commission. But they further say in this supplementary finding that claimants have, in some manner not shown to the court, presented or given notice of their claim against the defendants (The United States) to the said commission, but claimants had not presented their original vouchers, or any proofs, to said commission. They also find that claimants appeared before said commission with witnesses, but what they testified to is not shown. Taking these findings together, it seems to us that the Court of Claims meant to say that claimants did not submit their claims to the commission as arbitrators, or with intent that their decision should be conclusive, but that they did present their claims and did appear to support them with witnesses. This view of their meaning *216 is confirmed by reference to their original finding, in which it is said that “ claimants on their part never submitted their vouchers to the arbitration or decision of the commission.” No doubt these were the facts of the case; and as to this part of it they come fairly within the decision of the court in Adams's Case.
In the opinion of the court then delivered, it is held that this board had no authority to compel parties to submit their claims to it, and that its decisions were not conclusive when they did submit them. The court, referring to the various ways open to claimants to obtaiu satisfaction of their demands, and after speaking of an application to Congress, a suit in the Court of Claims, and a submission to this special commission, adds : “ This tribunal afforded an additional advantage over others, namely, that if, after the hearing and adjustment of the claims, the claimants were not satisfied, they were free to dissent and look for redress to the only legal tribunals provided in such cases.” And to the application of Adams to remand the case to the court below, founded on the allegation that the Court of Claims had made a mistake in finding that he had submitted his claim to the board, tLii court responds: “ Though it is true that the appellee did not present his claim to the board, as stated in the finding in the record on appeal, it cannot, in view of the original record of the evidence before the Court of Claims, be denied that he made himself a party to the proceedings and took the benefit of the adjustment of his accounts by them, which brings the case within the principle decided in 7th Wallace.” — (See 9 Wallace, 554.)
But though the claimants might have refused to abide by the decision of the board and sought relief from the Court of Claims or from Congress, they did not do so.
We lay out of view in this case, as in the Adams Case, the receipts which they gave, under protest, in order to regain possession of their vouchers. But we cannot disregard the finding of the Court of Claims that, after Congress had appropriated money to pay the sums found due by the commissioners, claimants received the amount so allowed, and signed upon each voucher a receipt whereby they acknowledged having received said reduced amount “in full of the above account.” And at the time of receiving this payment they made no for *217 mal objection or protest, but were required to aud did sign the receipt above described.
Although it is found by the court that these receipts were not under seal and were without consideration, the latter statement must have some meaning not apparent to us, in view of the other fact found also, that over $315,000 was paid to the claimants on those accounts at the time they gave the receipts.
To avoid the legal effect of these facts it is argued that not only in giving the receipts above mentioned, but also in accepting the money for which they were given, the complainants acted under duress.
We can hardly conceive of a definition of duress that would bring this case within its terms. Authorities are cited to show that where, under peculiar circumstances, property is withheld from the owner and he is forced to pay some unjust demand to obtain possession of it, he can afterward maintain a suit for the money so paid. But no case can be found, we apprehend, where a party who, without force or intimidation and with a full knowledge of all the facts of the case, accepts on account of an unliquidated and controverted demand a sum less than what he claims and believes to be due him, and agrees to accept that sum in full satisfaction, has been permitted to avoid his act on the ground that this is duress. If the principle contended for here be sound, no party can safely pay by way of compromise any sum less than what is claimed of him, for the ■compromise will be void as obtained by duress. The common and generally praiseworthy procedure by which business men every day sacrifice part of claims which they believe to be just to secure payment of the remainder would always be duress, and the compromise void.
But it is argued that the Government should be held to a different rule than that which applies to private parties. It is said that the amount in dispute here was so large that the ■claimants were compelled to accept what was offered to avoid bankruptcy.
No fact found by the Court of Claims, or otherwise presented by the record, justifies us in supposing that claimants were threatened with insolvency, and the circumstance that the claim which was the subject of the compromise was a very large one can hardly be accepted in a court of law or equity as a reason for setting it aside. If indeed there was any such *218 pressing motive in tbe minds of tbe clamants arising out of tbe condition of their private affairs as influenced them strongly to accept tbe offer of tbe Government, it cannot, in tbe absence of fraud or constraint on its part, invalidate tbe settlement.
It seems to us that this case, under tbe ordinary principles of law applicable to its class, is free from embarrassment.
If there bad been no reference to, and no finding by, tbe commission, it would still remain true, that here was a claim, tbe justice of which bad been denied and tbe amount that was due on it bad been in dispute for nearly two years. Tbe Government finally says to tbe claimants : We will pay you a certain sum on this disputed claim provided you will taire it in full satisfaction of tbe whole; when without intimidation, without fraud or concealment on tbe part of tbe Government; without protest or .objection on their part, claimants accept tbe money offered and sign a receipt acknowledging it to be in full of the-whole'claim.
Is not this a legal and binding compromise of tbe disputed demand1? Is it not a voluntary adjustment of tbe matter in dispute between tbe parties ?
And we think that it is a strong additional argument in favor of tbe validity of this settlement, when it is called in question in court, that tbe sum so agreed upon was found to be a balance justly due on tbe claim by a commission of three capable and honest men, appointed by tbe Government to ascertain what was due, and that before this commission tbe other party presented bis claim and produced bis witnesses, and was allowed a full and fair bearing to any extent that be desired.
In this view of tbe case it is of no avail to urge that tbe Court of Claims has found that tbe whole claim was just and ought to be paid. After tbe compromise that question was no longer open to inquiry. It is of tbe very essence of such adjustments of disputed rights that tbe contest shall be closed; and whatever consideration might be given tbe finding of tbe Court-of Claims on that subject in another department of tbe Government, this department, which sits to administer th'e law, must be governed by its recognized principles. _
Tbe judgment of tbe Court of Claims is reversed, and the-case will be remanded to that court with directions to render-judgment in favor of tbe United States.