Uott, J.,
delivered the opinion of the court:
This case presents a question of dispute and compromise. A series of decisions upon that subject by the Supreme Court, conflicting with previous decisions of this court, renders it advisable that we review the ground, and ascertain the rule which the court of last resort has established.
The ground which this court occupied in the Frémont Contract *144 Cases, and in the cases of Child, Pratt & Fox, and Clyde, (2 C. Cls. R., p. 1; 3 id., p. 105; 4 id., p. 176; 5 id., p. 134,) was that which has generally been maintained by courts of common law, beginning as long ago as Pinnel’s Case, (5 Reports, p. 117,) and continuing with little variation to the present day, viz : That where a contract is valid, the consideration expressed, and the service performed according to the agreement, a man cannot discharge the whole of his debt by paying a part of it. . To enable him to pay a part for the whole, something more than a receipt in full is necessary. (Fitch v. Sutton, 5 East R., p. 232.) Such a transaction is in effect an agreement by the creditor to give up something which has actually inured to him, and, being a new contract, can only be supported by a new consideration. It could, indeed, be supported by a release under seal, which imports a consideration, or by an implied consideration arising remotely from ever so slight an advantage over the terms of the original agreement. Thus a man might discharge a debt of £1,000 by giving a horse for it worth not more than £10; but he could not discharge it by paying £10. Or, where time was an element in the contract, he might pay a part for the whole, by paying it before the whole became due; but he could not wait till a cause of action had accrued, and expect his settlement to be held anything more than nudum pactum. (Sibree v. Tripp, 15 M. & W. R., p. 26.)
Where, however, an element of uncertainty enters into the case, it takes the place of a consideration, and the settlement can be supported as a compromise of a doubtful demand already accrued, or satisfaction of a debt which is so uncertain as to be fairly disputable. But with regard to compromise by the Government, this court always held, as courts of the common law have uniformly done with regard to individuals, that it is not enough that the demand be disputed,” but that it must also be disputable.'’ Where an officer of the Government refused to pay an agreed price after the goods had been delivered, or arbitrarily cut down the contract rate of compensation while the service was being performed, for no better reason than that he deemed the price too high, it was not regarded as bringing a case into that disputable condition which renders it the subject of compromise. In other words, we held, with Chief Baron Pollock, that a case must be bona-fide disputable,” and with Mr. Baron Parke, that it must be disputable on fair and reasonable *145 grounds,” and we should doubtless have agreed with him, if the question had ever been presented, that “ a plea of disputed” would not have been good.
When, however, we have gone from cases of express contract, where the price has been actually agreed upon by the parties before performance, to cases of implied contract, where the recovery would be in quantum meruit, a different rule has been regarded as applicable. There the price to be paid is undetermined, and it is open to the parties to agree as to what it shall be. The ascertainment of the price by them does not undo anything which they have legally done. The value of the goods or service has always the element of uncertainty attending it. In short, none of the reasons which appertain to cases of express contracts, requiring that the bargain which the parties have lawfully made shall be held good until altered by another equally valid, are applicable to a transaction which is, and must continue to be, open and undetermined until closed by voluntary agreement or the verdict of a jury. In such cases, therefore, it was held that where the Government paid, and the claimant accepted, a price as payment in full, it closed the transaction, and the contractor could not come in and be allowed to allege that his goods were worth more than the price which he consented to take for them. (Kirkham & Brown’s Case, 4 C. Cls. R., p. 223.)
It is as to cases of express contract, where the consideration is fixed and the agreement valid', that a difference has existed in the decisions in this and the Supreme Court. This court held that the commissions appointed by the Secretary of War were notspecial tribunals, invested with judicial power, and the Supreme Court has repeatedly so affirmed. This court also held that the proceedings of the commissions had not the finality of arbitrament and award, a doctrine which has been reiterated by the court above. This court again held that a receipt in full, when given to the Government, is open to explanation; and that, as a general doctrine, has not been questioned in the appellate court. But we also held that where the validity of the contract which fixed the price or compensation that the Government had agreed to pay had not been called in question, while the goods had been delivered or the service had been performed on the faith of it, there a subsequent arbitrary reduction by the officers or by the special commissions of the Government *146 —a mere refusal to páy what was legally due, for no better reason than that it was deemed too much— did not make the ease one that could properly be called “ disputable,” nor place the Government in any better position than that of a debtor, who ought to pay what he agreed to and does not.
It is at this precise point that the difference «between the Supreme Court and this court begins and ends; and, indeed, the difference can be brought down to the application of the single word “ disputed.” There have been four cases where the application of the general doctrine by this court to transactions with the Government has been reversed in the court above. In all of these cases it is noticeable that the Supreme Court has never used the word “ disputable,” nor, when the Government is a party to the dispute, held that the demand need to be more than “ disputed.”
In Adams’ Case, (7 C. Cls. R., pp. 58, 62,) Mr. Justice Nelson says: “They must-be regarded as claims disputed by the Government.” In Child, Pratt & Fox, (id., p. 218, Mr. Justice Miller says : “ The Government finally says to the claimant, ‘We will pay you a certain sum on this disputed claim, provided you will take it in full satisfaction of the whole.’ ” And again: “Is not this a legal and binding compromise of a disputed demand %” In Clyde’s Case, (id., p. 266,) Mr. Justice Bradley says: “ From the time that the order of the Quartermaster-General was made, disapproving of the charter-party, and razeeing the rate for the whole period of service, the case was clearly one of dispute, at least, if not one of acquiescence, on the part of the claimant.” In Justice’s Case, (8 C. Cls. R., p. 53,) Mr. Justice Davis says: “ This voluntary submission and reception of the money is an acceptance on the part of the claimant of the mode tendered him by the Government for the settlement of his disputed claim, and precludes him from any further litigation.”
In the first of these cases, Adams’, there had been an express contract, with a stipulated price; payment had been stopped, and the claim had gone before the Davis-Holt-Campbell commission. This court had found that the claimant voluntarily appeared before the commission, and subsequently that he accepted the award of the commission, and receipted for the amount as payment in lull, without objection or protest. In this court(2 C. Cls. R., p. 70) the principal contest had been upon the nature and power of the commission, and upon the effect *147 of the receipt in full which the claimant gave, and it had not been thought that the facts indicated a compromise, or indeed that any compromise had been intended by the Government or accepted by the claimant, but that both Congress and the Executive had intended to leave the question open for judicial determination. In the next case, which went to the Supreme Court, (Child, Pratt & Fox,) this element of voluntary appearance by the claimants before the commission was wanting. The claimants, indeed, went before the commission, but it was after their books and papers had been forcibly seized and illegally taken from their premises, and while they were endeavoring to recover possession of them. This court regarded all proceedings on the part of the claimants before the commission as extorted by duress and absolutely void, and the question of compromise was hardly alluded to, and was, indeed, in the opinion of the court, reduced to the naked act of final payment. Some difference of opinion as to the meaning of the facts found by this court is perceptible among the judges of the Supreme Court, and it is noticeable that the Chief Justice and Mr. Justice Clifford expressly dissented, and held that the case was not controlled by the previous decision in Adams. Mr. Justice Field was absent, and apparently took no part in the decision.
So far the question of dispute and compromise had been more or less complicated with the appearance of the claimants before a commission ; but in the third case, that of. Clyde, no such complication existed. The facts were few, and of the most unequivocal and decisive character. First, there was a written contract or charter-party, expressing an agreed rate of compensation, and neither the existence nor the validity of this contract had ever been in dispute. Second, the Quartermaster-General had recognized the contract by allowing the vessel to remain three months in service under it and paying her at the agreed rate, and by then allowing her to continue in service, without objection or question, for three months more. Third, the order of the Quartermaster-General, “razeeing” the rate of compensation, as it was termed, was both retroactive and prospective, and not only did it direct a reduction for the time past, then unpaid for,' but even went so far as to order a deduction to be made for the three months for which she had been paid, and to be withheld from the razeed amount then due her. In this court it was held that the order was effectual *148 from the time it was made, for the reason that the Government possessed the right, under the charter-party, to discharge the vessel at any time. If, we held, the owner then allowed her to remain in the service after the notice of the Quartermaster-General’s order, he must be deemed to have done so by impliedly acquiescing in the reduction of the rate. (5 C. Cls. R., p. 137.) In the Supreme Court, on the contrary, effect was given to the entire order, not upon the ground that it was valid, but upon the ground that it made the case “ clearly one of dispute, and that the receipt in full was clear evidence that the party agreed to talce that balance in satisfaction of the claimiP
The last of these cases, that of Justice, is one where there was an express contract, containing a stipulated price, for the sale of arms, which were to be equal to a sample. The arms were inspected, approved, accepted, and sent into service. Subsequently the case ■ was sent to the Holt-Owen commission by the Secretary of War, and a reduction made by the commission. The amount allowed was remitted to the claimant by a draft, which he accepted and took, but for which he gave no receipt. The case, therefore, differs from all which preceded it, in being unaccompanied by a receipt in full. In the others, the final payment was at the time affirmatively declared by the receipt to be payment in full; in this there was no such declaration, and non constat but that it might have been intended as payment in part. Certainty the claimant at most only circumstantially indicated that he accepted it in accord and satisfaction of his entire demand. Nevertheless, it was held that the acceptance of payment, amid the circumstances, was of itself conclusive. “ If,” says the opinion of the court, the party whose claim was disputed went before the commission, participated in its proceedings, and took the sum found to be due him xoithout protest, he cannot afterward be heard to say that he did not accept this in full satisfaction of his demand. This voluntary submission and reception of the money is an acceptance on the part of the claimant of the mode tendered him by the Government for the settlement of his dispxited claim, and precludes him from any further litigation.”
It is to be remarked that these conclusions were not reached without some dissent on the part of members of the Supreme Court. In the primary case of Adams, Mr. Justice Nelson, who delivered the opinion of the court, does not pass specific *149 ally upon tbe various grounds suggested in defense, but'combines them, namely: “ Voluntary submission of the claims to the board, the hearing and fiual decision thereon, the receipt of the vouchers containing the sum or amount found due to the claimant, and the acceptance of the payment of that amount under the act of Congress providing therefor,” as forming one complete bar. In the second suit, of Child, Pratt & Fox, the Chief-Justice and Mr. Justice Clifford seem to have deemed one of these grounds of vital importance, namely, “the voluntary submission of the claims to the board.” In the third case, that of Clyde, Mri Justice Field, who had been absent when Child, Pratt & Fox was decided, also dissented from the conclusions of the court, and held, though without assigning a reason, that the claimant should recover “ the amount stimulated in the charter-party. ”
Taking the three cases together, it is evident that the majority of the court has held that a dispute, followed by payment and acceptance of part of the debt, with an express avowal and acknowledgment in the form of a receipt in full, constitutes a fiual settlement or compromise. If any doubt existed in our minds as to this being the effect of these decisions, it would be removed by the authoritative declarations of the Supreme Court in two subsequent cases. In the first it is said: “ Parties having claims against the United States for labor or service, or for personal property or materials furnished, which are disputed by the officers authorized to adjust the accounts, may compromise the claim, and may accept a smaller sum than the contract-price. And where the claimant voluntarily enters into a compromise, and accepts a smaller sum and executes a discharge in full for the whole claim, he cannot subsequently recover in the Court of Claims for any part of the claim voluntarily relinquished in a couqDromise.” (Mason’s Case, 8 C. Cls. R., p. 130.) And in the second : “ Claims against the United States, which are disputed by the officers authorized to adjust such accounts, may be compromised, and if the claimant voluntarily enters into such compromise, and accepts a smaller sum than the claim, and executes a discharge in full for the whole claim, he is bound by the adjustment, and cannot sue for what he voluntarily relinquished.” (Sweeney’s Case, 8 C. Cls. R., p. 135.) The subsequent case of Justice goes a step further, and takes away the element of expressed avowal and acknowledgment. In *150 other words, it transfers the burden of proof from the debtor to the creditor, relieving- the Government from showing anything more than the dispute, a proffer of a mode of settlement, actual or constructive acquiescence iii the mode proffered, and payment of the part allowed, but requiring the creditor to show affirmatively that the payment was understood mutually not to be made as payment in full nor to be taken as a final settlement of the dispute.
But here some question must arise as to the limit to which the Supreme Court has gone. The cases of Adams, Child, Pratt Fox, and Justice form a series, all of them being involved with the proceedings of military commissions. The case of Clyde is distinct from them, being one of those cases, in the language of the Supreme Court, “ disputed by the officers authorized, to adjust such accounts,” and accompanied by a receipt in full for the whole claim. In other words, two distinct propositions seem to have been enunciated; first, where a disputed claim has gone, with or without the consent of the party, before a military commission, there, if he accepts payment of the amount of the award without a distinct protest which will inform the Government that the compromise is nevertheless rejected, he will bo bound as completely as though he had given a discharge in full for the whole claim; second, where a claim is simply disputed by the officers authorized to adjust such accounts, there, if the party accepts payment of the portion allowed, and gives a receipt in full for the whole claim, he will be bound by the adjustment. Are the different members of these different propositions convertible terms? Can we transpose the latter term of the former proposition to the other, and hold that, where the accounts are simply disputed by the officers authorized to adjust such accounts, payment and acceptance, without protest, will be as binding as though a receipt in full had been given. That precise question is not necessarily before the court, and we prefer to leave it undetermined until a case shall directly present it.
What does seem to have been decided may be reduced to three heads, and nothing more: First, where the Government is contractor, a refusal to carry out an express contract by the head of an Executive Department, or a dispute on the part of the officers authorized to adjust such accounts, will render the *151 case not merely disputed, but •“ <Msj>utdble,” within the intent of the ordinary rule of law, so as to make it the subject of compromise, without the compromise being necessarily supported by a new consideration. Second, where payment of an express contract is disputed by the head of an Executive Department, and a means of compromise is proffered beyond the ordinary accounting officers of the Treasury or the officers authorized by law to adjust such accounts, such as a quasi arbitrament in the form of a commission, there, if the party, voluntarily or involuntarily, avail himself of the proffered means and accept the amount which is allowed, without affirmatively informing' the Governmentthat it will not be taken in discharge of the debt, it will constitute a final and conclusive compromise. Third, where an express contract is, for any reason or without a reason, disputed by the officers authorized to adjust such accounts, acceptance of the portion allowed, accompanied by the giving of a receipt in full, will attach to the receipt all the consequences of a release under seal, and be deemed conclusive evidence of a legal agreement to accept a piortion in satisfaction of the whole.
In the case now before us there was no express contract; there was no stipulated consideration; the payment was not evidenced by a receipt in full. Yet we cannot avoid thinking that it was made as such on the part of the Government and accepted as such on the part of the claimant. A receipt in full is merely evidence of the intent of the parties. That evidence may be supplied in other ways, and it would ordinarily be for the jury to say whether the one paid and the other received in the mutual understanding that it was final payment of the account presented. Looking at all the acts of the parties in this case, we think that such was the intent and such the effect of the payment here.
The judgment of the court is that the petition be dismissed.
LokiNG-, J., did not sit in this case, and took no part in the decision.