Mr. Chief-Justice Waite
delivered-the opinion of the court:
In the determination of this cause it is necessary at the outset to ascertain definitely the terms of the contract under which the United States occupied the property of the petitioner. On the one hand, it is claimed that the proposition of Mr. Lovett was accepted by General Mansfield with modifications, and that all stipulations suggested by him are included in the contract' as finally entered into, unless modified or rejected in terms by th^note of General Mansfield. On the other hand, it is contended by the United States that the note of General Mansfield, instead of being an acceptance of the proposition, was a rejection of it, with an offer of new terms, which, when acceded to by Mr. Lovett, embraced all there was of the contract as made. The latter, we think, is the true construction of the correspondence. We know that when a contract is entered into by correspondence the whole correspondence must be considered in determining what the parties have agreed to, but we also know that both parties must assent to a, proposed agreement before *83 either is bound by it. Here General Mansfield has nowhere indicated a willingness to accept any of the terms offered him, bnt, rejecting all, has made a new offer of his own. No reference whatever is made by him to any of the special stipulations suggested by Mr. Lovett. All these are laid aside, and he states the terms upon which the United States will hire the property. The words “ as above,” where they occur in his note, are used to designate the- property, not to extend the offer. In short, Mr. Lovett proposed his terms, and General Mansfield his. Mausfield’s were accepted, but Lovett’s were not.
This being the case, the contract is one by which Mr. Lovett agreed to let, aud the United States to hire, the premises described for the term of one year, with the privilege of three, at a rent of $500 a month, and without restriction as to the use to which the property might be put. The United States agree to nothing in express terms except to pay rent and hold for one year.
But in every lease there is, unless excluded by the operation of some express covenant or agreement, an implied obligation on the part of the lessee to so use the property as not unnecessarily to injure, it, or, as it is stated by Mr. Comyn, “to treat the premises demised in such manner that no injury be done to the inheritance, but that the estate may revert to the lessor undeteriorated by the willful or negligent conduct of the lessee.” (Com. Land. & Ten., 188.) This implied obligation is part of the contract itself, as much so as if incorporated into. it by express language. It results from the relation of landlord and tenant between the parties which the contract creates. (Holford v. Dunnett, 7 M. & W., 352.) It is not a covenant to repair generally, but to so use the property as to avoid the necessity for repairs as far as possible. (Horsefall v. Mather, 7 Holt, 9; Brown v. Crump, 1 Marsh., 569.)
There are in this contract no stipulations to taire the place of or in any manner restrict this implied obligation on the part of the United States growing out of their relation to the petitioner and his lessees. They had the free^nd unrestricted right to use the property for any and all purposes, but were bound to so conduct themselves in such use as not to cause unnecessary injury. Whatever damages would necessarily result from a use for the same purpose by a good tenant must fall upon the *84 lessor. All that the relation of landlord and tenant implies in this particular is that the tenant while using the property will exercise reasonable care to prevent damage to the inheritance. His obligation repts upon the maxim,sie títere tuo, ut alienum non ladas. If he fails in this, he violates his contract and must respond accordingly.
The United States, when they contract with their citizens, are controlled by the same laws that govern the citizen in that behalf. All obligations which would be implied against citizens under the same circumstances will be implied against them. No lease in form was ever executed in this case, but the contract, followed by the delivery of possession'and occupation under it, is equivalent, for the purposes of this action, to a lease duly executed containing all the stipulations agreed upon.
Such being the agreement of the parties, it remains only to consider the questions arising under it as they appear in the record.
1. As to the rent. The United States hired for a year absolutely, at the agreed rent of five hundred dollars a month, and occupied during the whole of that term. They therefore, by their agreement, were expressly bound to pay rent at that rate for the whole of the year. This they have paid in full to June 30, but after that, until the end of the year, August 23, 1862, their payments have been only at the rate of two hundred and fifty dollars a month. Payment by a debtor of a part of his debt is not a satisfaction of the whole, except it be made and accepted upon some new consideration. It is not found that there was any new consideration in this case. All that appears is that an account was made out for the rent from July 1 to September 30, at the new rate, and that this account was receipted by Mr. Lovett after payment. Upon this finding, therefore, in the absence of anything more showing that the reduction in the rent of the first year was part of the agreement to.continue the lease beyond the year upon the new terms, the petitioner will be entitled to judgment for rent at the rate of two hundred and fifty dollars a month from June 30 to August 23, 1862, that being the balance remaining after deducting payments made.
After the end of the first year the case is different. The United States were not bound absolutely to keep the premises for a longer term than one year. After that they could make new terms or leave. The acceptance by Mr. Lovett of the. re *85 duced rates from that time, without objection, is conclusive evidence of his assent to a modification of the original agreement in this particular, in consideration of the continued occupancy by the United States. Having thus secured the occupancy, he cannot now object to the agreement under which it-was obtained.
2. As to the use for a small-pox hospital., Mr. Lovett originally offered the property to the Government “ for the purpose of a hospital,” and all the receipts for the rent expressly state that the property was beiug so occupied. No objection to such an occupancy was ever made, and, if there was nothing more, the presumption would be that the lessor expected the property was to be used for any and all hospital purposes that the.necessi-tiesof the Government for the time being might require. But the note of General Mansfield is broad enough to cover such an occupancy, for he expressly states that the hiring is to be “ for all purposes.” No recovery can be had upon this specification of claim.
3. As to the destruction of a part of the buildings by fire. There was, as has been seen, qo express agreement to repair in the lease. The implied obligation is not to repair generally, but to so use the property as to make repairs unnecessary as far as possible. It is in effect a covenant against voluntary waste, and nothing more. It has never been so construed as to make a tenant answerable for accidental damages, or to bind him to rebuild if the buildings are burned down or otherwise destroyed by accident. In this case it has not been found, neither is it claimed in the petition, that these premises were burned through the neglect of the United States. . No judgment can, therefore, be rendered against the United States on this account.
4. The destruction of the trees and fences and the digging and carrying away of gravel and stone. Whatever injury was done to the property during the occupation, previous to the agreement for the lease, cannot be recovered for in this action. Mr. Lovett’s proposition included an undertaking on the part of the United States to make good this loss, but his proposition was not accepted, and the case stands as if it had never been made. The obligations of the United States under the lease, as to the preservation of the property, relate only to the condition of the premises as it was when the term commenced. All damage done before that is clearly “ damages ■ * * by the Army *86 and Navy * * # engaged in the suppression of the rebellion,” and on that account not recoverable in the Court of Claims. (13 Stat. L., 381.) But damages after the lease commenced, and while the United States were actually in possession under it, occupies a different position. That comes within the contract by which the rights of the parties in this action are to be determined. As has been seen, that does not bind the United States to make good any loss which necessarily results from the use of the property, but only such as results from the want of reasonable care in the use. It binds thenti not to commit waste or suffer it to be committed. If they fail in this, they fail in the performance of their contract, and are answerable for that in the Court of Claims, which has jurisdiction of “all claims founded upon any contract, express or implied, with the Government of the United States, which may be suggested to it by a petition filed therein.” (Rev. Stat., sec. 1059,• 10 Stat. L., 612, § 1.) If there had been in this lease an express agreement to repair, certainly it could not have been succ essfully claimed that the Court of Claims would not have had jurisdiction to award damages for a failure to rebuild after the fire, even though the fire was caused by the soldiers while in the hospital for treatment. But the implied obligation as to the manner of the use is as much obligatory upon the United States as it would be if it had been expressed. If there is a failure to comply with the agreement in this particular it is a breach of the contract for which the United States consent to be sued in the Court of Claims. All depends upon the contract. Without that the jurisdiction does not include actions for damages by the Army. With it, damages contracted against may be recovered as for a breach of the contract.
It appears in the finding that during the occupancy under the lease ornamental trees were destroyed, fences and walls torn down, and the materials used for sidewalks and the erection of other buildings, or carried away, and that stone was quarried and gravel dug from a stone-quarry and gravel-pit on the premises and taken away. This was voluntary waste and within the prohibition of the implied agreement in the lease. For this the Court of Claims can award compensation in this action. The amount of this damage has not been found.
5. The account as stated in the Quartermaster-General’s office. This does not conclude the United States. It was a *87 mere adjustment of the accounts by oue of the bureaus in one of the Departments of the Government rejected by the accounting-officers of the Treasury, and never paid. Certainly this can have no binding effect upon the United States.
The judgment of the Court of Claims is reversed, and the cause remanded with instructions to render judgment against the United States for the rent of the premises from June 30 to August 23,1862, at the rate of two hundred and fifty dollars per month, and for the damages done «to the property other than the destruction of the house by fire during the occupation of the United States under their lease, except to the extent that the same necessarily results from the use of the premises by the soldiers of the Army of the United States for the purposes of a hospital and camp-ground.