BichaedsoN, J.,
delivered the opinion of the court:
On the 16th of July, 1874, the claimant entered into a contract with the defendants, through the chief quartermaster of the Military Department of Texas, at San Antonio, to furnish *302 tbe military post of Fort Sill, Indian Territory, witli 756,045 pounds of good merchantable oats, more or less, as might be required, during the fiscal year ending June 30,1875. The oats were to weigh 32 pounds to the bushel, and were to be delivered at such times and in such quantities as the receiving officer might require for the wants of the post during the year: Provided, That when the oats should be deficient in quantity or quality, the receiving officer should have power to supply the deficiency by purchase, and have the contractor charged with the difference in the cost to the government, subject to the approval of the department commander. The defendants, on their part, agreed that the contractor should receive for each and every bushel of oats so delivered the sum of 93 cents per bushel, in United States currency, payment to be made monthly when the department is in funds, and that at any time when 1,000 bushels were delivered, inspected, and received, a voucher should be given and payment made for 500 bushels of the same, and thereafter for such amount as might be delivered until final delivery, when the 500 bushels retained should be paid for on final settlement.
The claimant began to deliver the oats required about August 19, 1874, and continued to make deliveries until after January, 1875.
Between October 2 and December 31, 1874, he delivered 196,985 pounds, the contract price of which amounted to $5,724.87. This amount was admitted to be correct and no controversy arose as to its having been earned by the claimant. But when the account was rendered the assistant quartermaster deducted from it the sum of $1,020, and paid the balance only to the claimant’s attorney, who, on the 6th of March, 1875, gave a receipt in full of the account. The deduction was made under the following circumstances:
Early in January, the defendants having made no monthly payments for the oats already delivered, as provided by the contract, the claimant became so exhausted in his pecuniary means that he was unable to furnish the oats as fast as required, and he notified the officers that it would be impossible for him to continue unless the government made some provision for payment. 'None was made, and he received no money from the defendants until the 22d of February. On the 7th of January, the assistant quartermaster contracted with one Morris for th e *303 delivery of not exceeding 6,000 bushels of oats, and under that contract 192,000 pounds were delivered, at a cost to the defendants of $1,020 more than the contract price in the claimant’s contract.
In approving the Morris contract, the post commander ordered the receiving officer to charge the difference in cost to the former contractor, the present claimant. This the receiving officer did without the approval of the department commander.
The contract provided that the receiving officer, who might be supposed to understand all the circumstances better than the post commander, should have the power to charge the contractor for supplies to make up deficiencies, subject to the approval of thé highest officer in command — the department commander. It contemplated the independent judgment of each of those officers. When the receiving officer acted upon the order of the post commander, he surrrendered his own judgment and carried out the will of another, in whom the contract had vested no discretion or power in the matter.
A military officer, in obeying the order of a superior, assumes no responsibility for its correctness, and does not adopt it as his own, but becomes merely the instrument by which the power above him is executed.
The receiving officer, therefore, did not of his own judgment make this charge against the claimant, and, moreover, the department commander never gave his approval to what was done. It is therefore clear that the claimant was not chargeable with the difference in cost of the oats delivered by Morris.
The claimant is therefore entitled to judgment for the unpaid balance of his account and voucher, unless his right is -barred by the receipt in full, signed in his name by his duly-authorized attorney.
There is no principle of the common law better established and more generally recognized than that a payment, which is only in accordance with the terms of the contract and after its maturity, of part of a liquidated and ascertained debt is no satisfaction in law of the whole indebtedness, and that a receipt in full given upon such part payment is nudum pactum as to the unpaid balance, and not binding upon the maker. (Chittey’s Con., Perkins’ ed., 821, title Payment; 2 Parson’s Con., 4th ed., 129; Bostwick v. The United States, 94 U. S., 53, and 12 C. Cls. R., 67.)
*304 There are some apparent, though not real, exceptions. To make the receipt of part a discharge of the whole, there must be a new consideration, or a voluntary and well-understood compromise of a disputable and disputed claim, by which each party yields something for the concessions of the other; or an accord and satisfaction, by which a new contract is substituted, or a submission to arbitration; in each of which cases a consideration is expressed or implied. All the decisions upholding part payment as a discharge of the whole debt have turned upon one or the other of these apparent exceptions. The consideration may be slight, but it must be found to exist; as the payment of a note before its maturity, or by the promise of another party, or in chattels not required by the contract, or in any other manner differing from the original agreement, which may seem to be more beneficial to the payee. (Child et al. v. United States, 12 Wall., 232, and 7 C. Cls. R., 209; Mann v. United States, 17 Wall., 67, and 8 C. Cls. R., 125; Comstock's Case, 9 C. Cls. R., 141.)
In the present case there was no new consideration for the discharge of the whole of the claimant’s demand, no voluntary compromise, and no accord and satisfaction, from which a consideration can be implied. The defendants’ officers, having the power, arbitrarily reduced the liquidated debt duo the claimant, by deducting from it a sum in set-off, which we have shown was not a legal and valid claim. At that time the money paid to the claimant had been long overdue, and the defendants did nothing more than to satisfy, to that extent, their long-matured obligations. It was a simple payment of part when the whole was duo and ought to have been paid; nothing more. The yielding was all on one .side, which renders the receipt nudum pactum as to the unpaid portion of the claim.
In Bostwick's Case (92 U. S., 53, and 12 C. Cls. R., 67) the claimant had leased to the defendants certain real estate for one year at the rent of $500 a month. Before the expiration of the year the defendants notified the owner that they should reduce the rent to $250 a month. Thereafter rent was paid at the reduced rate, and receipts were given by the lessor in full payment. The court held that as to the rent for the one year specified in the lease the receipts were nudum pactum, and the claimant recovered the agreed price for the unexpired part of the term; but as to the rent for the occupation after the expira *305 tion of tbe lease, tbe notice, acceptance, and receipts constituted a new contract. (Field’s Case, 13 C. Cls. R., 41.)
Tbe present case cannot be distinguished in .principle from that of Bostwick.
Tbe judgment of tbe court is that tbe claimant recover the sum of 61,020, and it will be so entered in bis favor.
HUNT, J., was not present when this case was argued, and took no part in the decision.