Weldon, J.,
delivered the opinion of the court:
In the year 1869, the claimant, a corporation of the State of' Massachusetts, made two written contracts with the United States, and, among other things, agreed to deliver to them an indefinite quantity of granite, to be used in the erection of a, post-office and sub-treasury building in the city of Boston.
The first agreement was made on the 13th of July and the-second on the 26th of October, 1869, both of which were ex *7 tended by act of the parties. The contracts ~and extensions will be found in finding I, or so muela of them as is material to be considered in the discussion and determination of the issues of this controversy.
The contract dated July 13 relates to the foundation material for said building, and the one dated October 26 to the material of the superstructure.
The contracts are very similar in their provisions, except as to the price to be paid by the defendants. In both it is provided that a certain per cent, shall be paid monthly as the delivery progresses, and the residue when the contracts shall_be fulfilled to the satisfaction of the United States.
Under the contract of July 13 claimant delivered 21,355 cubic feet of stone prior to September 30,1871, each stone exceeding 20 feet in contents, and 52,188 cubic feet under the extension of said contract.
Under the contract of October 26 claimant delivered 98,679 cubic feet of similar stone, and under the extension there of 94,234 feet, aggregating under both contracts 266,456 feet, as will be seen by reference to the findings.
For this amount of stone delivered under both contracts the defendants have paid the claimant, as it alleges, 20 cents per cubic foot less than it is entitled to; and this suit is prosecuted to recover the sum of $53,291.48 withheld by the government upon the construction of the contracts by the officers instrusted with the payment of the money.
The difference between the litigants originates as to the proper construction of the agreements in the amount to be paid for stone having a greater cubic content than 20 feet.
This controversy commenced in the early period of the work, and was a subject of contention at several times during the progress of the same.
In February, 1875, a voucher was certified by the proper officer of the government, for granite delivered by claimant under the different contracts, amounting to $141,976.03, with credits to the government of $137,666.38, leaving a balance due the claimant of $4,309.65. With that voucher there was presented to the claimant a receipt, bearing date on said day; and after reciting the amount of money, the receipt concluded with the following words: “In full payment of the above account, and in full of all claims that have arisen or may arise *8 under tbe contracts above specified, and in final and absolute settlement of tbe same.”
Tbe receipt thus worded was executed by tbe president of tbe company, who at tbe same time, and as a part of tbe transaction, filed with said receipt, and attached to it, a written protest, in substance that the receipt does not cover certain claims which are not included in tbe voucher on file for tbe amount for which the receipt is given; “ that the receipt in full is a receipt for the claims represented by these vouchers only.”
The papers so executed were delivered to the' agent of the •defendants who paid the said sum of $4,309.65.
The phraseology of the protest of February 23, 1875, was, on the 27th of March, changed, by the consent of the parties, in ■order to identify it more accurately with the voucher and receipt, its legal effect from its mere words remaining the same.
On the 7th of October, 1882, another receipt was given by the claimant for stock supplied under said contracts, amounting to $30,000, which was “in full of the above account.”
Again, on the 24th of July, 1883, a voucher was made showing a balance due claimant of $7,357.33, and the claimant, by its president, executed a receipt for said balance, “ in full payment of the above account,” accompanying it with a written ¡protest “ that it does not cover certain claims which the Cape Ann Granite Company has, which are not included in the vouchers on file for the amount of which this receipt is given; that the receipt in full is a receipt for claims represented by this voucher only.”
The payments to the claimant were made on the assumption that the price per cubic foot for each stone is found by increasing the contract price per cubic foot for like stone, measuring 20 cubic feet or under, by as many cents, minus 20, as there are cubic feet in the given stone, thus making the price per •cubic foot of a superstructure stone containing 30 cubic feet 65 cents (55+30 — 20=65).
To the claimant’s right of recovery the defendants interpose «three objections: ' t
First. That by a proper and legal construction of the contracts the claimant has received as much as it is entitled to be paid. Second. That having executed a receipt in full, it is barred from recovering further compensation. Third. That as *9 to a portion of the claim the statute of limitations destroys the right of action.
We will consider these defenses in the order named. In the contract of the 13th of July the doubtful phraseology is as follows : The party of the first part “ agrees to pay the sum of 39§ cents when the dimension does not exceed 20 cubic feet in each stone, with 1 cent additional for every cubic foot in any single stone beyond said 20 cubic feet each.”
In the contract of October 26 the words are “55 cents per cubic foot for all stones the quarried dimensions of which do not exceed 20 cubic feet in each stone, and 1 cent additional for every cubic foot of those having such dimensions exceeding 20 cubic feet.”
The words used in each contract are so similar that a construction of one is necessarily a construction of the other.
The question as to the proper construction of the agreements is not anew one in the jurisdiction of this court. In the case of Dix Island Granite Company v. United States (12 C. Cls. R., 624) a petition was filed embracing substantially the same cause of action asserted by the averments of the petition in this case. A demurrer was interposed, which was sustained by a majority of the court on the main question of the petition, and by all the court upon matters of detail. The case was finally heard on its merits before additional judges, and a judgment entered for the claimant, based upon the theory of compensation sought to be maintained by the claimant in this proceeding. The case was appealed to the Supreme Court, and is reported in 105 U. S. R., 37.
In the decision of the Supreme Court it is said:
“ Where a party who delivered granite was by the terms of his contract to receive the sum of 65 cents per cubic foot for all the stones when the quarried dimensions do not exceed 20 feet in each stone, and 1 cent additional for each cubic foot of those having such dimensions exceeding 20 cubic feet: Held, that where the dimensions exceed 20 cubic feet he is entitled for each cubic foot 65 cents, and 1 cent additional for each cubic foot of the entire stone.”
The only difference between the words of the contract of July 13 and October 26 is in the word’“beyond” being used in the one of July and the word “ exceeding” being used in the agreement of October 26. We do not regard this mere verbal difference as making in law a difference of construction.
*10 In tbe contract considered by tbe Supreme Court in tbe Dix Island case tbe word "exceeding” is used, corresponding in that particular to tbe agreement of October 26.
Considering tbe two agreements in tbe light of tbe rule of construction announced by tbe Supreme Court as to tbe basis of compensation, we are constrained to bold that tbe measure of compensation counted on in tbe petition is tbe correct and legal one, which may be stated as follows: The price per cubic foot for each stone over 20 cubic feet is found by increasing tbe contract price per foot, for like stone measuring 20 feet or under, by as many cents as there are cubic feet in tbe given stone.
It is insisted that when tbe claimant (after tbe negotiations set forth in tbe findings) accepted tbe $4,309.65, it took the money upon tbe terms expressed, and that such terms were not affected by tbe protest; that tbe receipt in full operates in law as an estoppel against tbe claimant, and fixes not only tbe liability of tbe parties antecedent to February 23, 1875, but subsequent thereto.
In order to give tbe transaction of February 23 tbe effect claimed by tbe counsel for the government, we must bold it as having a broader significance than a mere receipt. It must have tbe legal embodiment of a settlement, compromise, or an accord and satisfaction. Tbe parties must have agreed on some basis as an adjustment of existing disputes.
Ordinarily a receipt in law is a mere admission in writing, which may be contradicted and disputed unless some intervening interest or right is to be prejudiced by proving tbe receipt to be untrue. The findings do not show that any right or interest of tbe United States became or was changed upon tbe faith of what was acknowleged by tbe claimant in tbe receipt.
At tbe time tbe receipt was given there were contracts between the United States and tbe claimant, in which each party bad such rights and interests as the law might determine. A surrender of any of them must be founded upon some consideration received. Tbe claimant said, by its agent, “ We are entitled to 20 cents more per cubic foot than you are willing to give us.” Tbe defendant said, by its agents, “ We acknowledge that there is due tbe claimant $4,309.65, and if it will execute a receipt in full of all claims that have arisen or may arise we will pay just *11 wbat is clue for past service.” Tbe government maintained its position, it did not concede or compromise, and tbe plaintiff received in tbe transaction, wbicb is now claimed as a settlement in full, simply wbat its adversary admitted was its due.
If tbe claimant surrendered an asserted right, wbat was tbe consideration of tbe concession ? If tbe paper of tbe 23d of February is to bave tbe effect claimed for it by defendants, it must be because it is a transaction witb tbe government, and is therefore not subject to tbe rules of law defining and determining tbe rights of individuals. It has been decided by this court and affirmed by tbe Supreme Court that tbe liability of tbe government in actions of contract, expressed or implied, is. simply that wbicb the claimant might pursue against tbe defendants in another court (2 C. Cls. R., 214).
“ It is settled that when tbe United States become a party to commercial paper they are bound in any court to whose jurisdiction they submit by tbe same principles that would govern individuals” (7 Wall., 666; 7 C. Cls.R., 65). Thesecases are sufficient to establish tbe similarity as to tbe rights of the-government and individuals in a matter of contract, unless by tbe force of some statute tbe law is changed.
To maintain tbe theory of tbe defendants tbe counsel for tbe government cite two principal cases as embracing tbe law of receipts or transactions done under protest (Croft v. Lumley, H. L., 672, and Savage v. The United States, 92 U. S. R., 382).
In tbe case of Croft v. Lumley tbe court was asked to enforce a forfeiture against a tenant, in bolding that a payment made by tbe tenant was by way of compensation and not as rent. It was paid as rent by tbe lessee and received under protest by tbe lessor as compensation. Tbe lessor bad received money paid as rent by tbe lessee, and afterward sought to forfeit the-leaseby applying tbemoney as compensation. Courts are loath to enforce penalties or declare forfeitures, and will not do so unless in clear and imperative cases. In that case there was a payment of money, wbicb was to be appropriated either as rent or as compensation. Tbe party paying bad a right to bave it appropriated as be directed; and tbe receipt of it by the creditor, although under protest, bad the effect in law to give tbe money tbe direction indicated by tbe debtor. He distinctly paid it as rent. He refused to pay it otherwise than as rent. Two well-established principles of law distinguish that *12 case from the case at bar: first, the disinclination of courts to enforce forfeitures, and, second, the right of a party paying money to have it applied or appropriated as he directs.
If the transaction in this case comes within the reason of the rule laid down in Savage v. TheUnited States, it is a complete answer in law to the claimant’s demand. Does it fall within the doctrine intended to be established by that decision ? ■
In the matter of the redemption of the Treasury notes issued under the authority of the act of July, 1861, the Secretary of the Treasury was dealing with a subject-matter regulated by statute, and whatever he did by way of redemption must be in strict accord with the requirements of the statute. The jiro-•ceeding of redemption, both on the part of the Secretary and the holder of notes, was regulated by positive law, and if they acted so as to work the redemption and surrender in fact, it had that effect in law. The court said:
“ Actual surrender of the Treasury notes to the Secretary was a condition precedent to the right of the Secretary to redeem the same, and that fact was as well known to the agents -of decedent as to the Secretary; and it must be that they knew full well that the payment of the Treasury notes could not be made unless the surrender was absolute and unconditional. Viewed in the light of these suggestions, it must be held that the protest was unauthorized by law, was a mere ex parte act, without any legal effect to qualify the voluntary surrender of the Treasury notes, which both parties understood to be absolute and unconditional.”
The only redemption authorized by law was absolute and unconditional. The transaction between the parties from which this litigation arises is not so circumscribed. We are asked to hold that the protest is without legal effect, and that the claimant is estopped by the receipt in full. Estoppels are similar in strictness to forfeitures and the enforcement of penalities. They are not favored defenses when the technicality of the es-toppel cannot be subordinated to its equity. Andrews v. Lyons (11 Allen, 349); Louensbery v. Depew (28 Barbour, 44) ; Waters' Appeal (35 Penn. St., 523); Babcock v. Pary (8 Ohio St., 270); State v. Pepper (31 Ind., 76).
The effect of a receipt in full is considered in the case of Baldwin v. The United States (15 C. Cls. R., 303). The court said:
“There is no principle of the common law better established and more generally recognized than that a payment, which is only in accordance with the terms of a contract, and after its *13 maturity, of a part of a liquidated and ascertained debt is no satisfaction in law of the whole indebtedness, and that a receipt in full given upon such payment is nudum pactum as to the unpaid balance and not binding upon the maker. (Chitty on Contracts, Per. edition, 821, title Payment; 2 Pars., Con., 4th ed., 129; Bostwick v. The United States, 94 U. S. R., 53; 12 C. Cls. R., 67.) * * * To make the receipt of a part a discharge of the whole there must be a new consideration, or a voluntary and well-understood compromise, of a disputable and disputed claim, by which each party yields something for the concession of the other, or an accord and satisfaction by which a new contract is substituted, or a submission to arbitration; in each of which cases a consideration is expressed or implied.”
Child et al. v. United States (12 Wall., 232; 7 C. Cls. R., 209); Mason v. U. S. (17 Wall., 67; 8 C. Cls. R., 125), Comstock’s Case (9 C. Cls. R., 141).
We now come to the consideration of the receipt in connection with the protest. Whatever may be said of the legal effect of the protest, it was the intention of the claimant to save its rights in*the construction of the agreements as alleged in the-petition.
The protest was made at the time the receipt was made and given, and is, in fact;, a part of the same transaction.
It was cotemporaneous with it, and passed to the defendants in explanation of, and. as contradictory to, the receipt in full.
The effect of receiving a part as a satisfaction of the whole, without protest, has been discussed and decided by the Supreme Court in passing upon claims submitted to a commission, and we briefly quote from the decisions:
“If there had been no reference to, and no finding by, the commission, it would still remain true that here was a claim the justice of which had been denied, and the amount that was due on it had been in dispute for nearly two years. ' The government finally says to the claimants, ‘We will pay you a certain sum on this disputed claim, provided you will take it in satisfaction for the whole/when, without intimidation, without fraud or concealment on the part of the government, without protest or objection on their fart, the claimants accept the money offered and sign a receipt, acknowledging it to be in full of the whole claim. Is not this a legal and binding compromise of explicit demand? (U. S. v. Child & Co., 12 Wall., 245.)
“ This commission, like all others of similar authority, possessed no judicial power, nor did it attempt to exercise any. It could not compel a claimant to appear before it and submit to its action, nor would its decisions, in case there were no adver *14 sary party, have any conclusive effect. If, on the contrary, the party whose claim was disputed went before it, participated in its proceeding's, and took the sum found to he due him without protest, he cannot afterwards be heard to say that he did not accept this in full satisfaction of his demand. * * *
“It is always in the power of parties to compromise their differences. One way of doing this is by arbitrators mutually ■chosen, but from such submission neither party is at liberty to withdraw after the award is made. The condition creditor is better than this, for if dissatisfied with the allowance made him by the commission he can refuse to receive it, or can accompany his receipt of it, if he chooses to take it, with a proper protest. This protest is necessary to inform the government that the compromise is rejected, and that this rejection leaves the claimant free to litigate the matter in dispute before the Court of Claims. If with this knowledge and under these circumstances the money is paid, there can be no just cause of complaint on either side, .and the status of the parties is not affected by anything which transpired before the commission. (U. S. v. Justice, 14 Wall., 548.)
“Parties are bound to their good faith in their dealings with the United States as well as with individuals, and the court is of the opinion that no party in such a case could be justified, .after accepting such a compromise and executing such a discharge, in claiming damages for a breach of the prior contract which had been voluntarily modified and surrendered, unless the neto contract was accepted under protest or with notice that damages would be claimed for the refusal of the United States to allow the claimant to fulfill the contract which was modified in the new arrangement. * * * Nor can such a commission •compela claimant to appear before them and litigate his claim, but if he does appear and prosecute it, or subsequently accepts the terms awarded as a final settlement of the controversy, without protest, he must be understood as having precluded him•self from further litigation. (Mason v. U. S., 17 Wall., 73.)”
The receipt of the 23d of February, by its terms, not only ■operates on past transactions, but assumes to settle disputes that might arise subsequent thereto; and to hold that it “ works as an estoppel” would be to extinguish the rights of one of the parties and subject it to the irresponsible tyranny of the other. The United States changed it, eliminating claims embraced in the voucher on which it was founded.
A receipt in full is not binding as such simply because it ¡recites that it. is in full. It is open to contradiction according to the fact. • It has no force as a contract, and is inoperative to bind the parties, unless it is based upon an agreement, com *15 promise, or settlement with a complete understanding. At the time the receipt was given the protest was accepted by the agent •of the government without objection, the president of the company asserting, beyond the protest, that there were other claims, to wit, as to measurement, which were not included in the receipt. Neither party to the transaction of giving and accepting the receipt understood it as a settlement of differences as to measurement. The protest was afterwards changed by the claimant, by the consent of the defendants, so as to preserve the identity between the receipt and protest. We do not regard the fact that the receipt was sent by one officer of the government and delivered by another as sufficient to change the law applicable to such transactions.
Construing the receipt and protest as one transaction in fact and in law, and finding no evidence that any settlement took place between the parties, we must hold that the receipt is inoperative as an estoppel against the right of the claimant to have its claim examined in this court.
As the statute of limitations is interposed to a portion of the claim embraced in the petition and amendments, it will be necessary to examine the condition of the record. '
It is insisted that for deliveries during a certain period between the date of the petition and amended petition of 1884 the claimant has no right to recover, because such deliveries could not be included in the original petition, being subsequent to the bringing of the suit, and not embraced by the averments, and more than six years prior to the amendment in April, 1884.
The original petition was filed on the 21st of September, 1878, and by its allegations it embraced causes of action founded on three distinct contracts, to wit, the contract of July 13,1839, October 26, 1869, and September 1, 1870.
Not only are the original and extended contracts counted on by averment and in legal effect, but the extensions of each contract is alleged in the petition, and copies of the originals and extensions are filed with the petition, and made part of it by direct averment. In the original pleading the claimant demands $22,666.94,[the^amount due it at the time of bringing the' suit.
After the first [petition was filed the claimant continued to furnish material, and the officers of the defendants in charge of the construction of the building and disbursement of the *16 funds continued to pay upon their theory of the contract, and from which it became necessary to bring the original suit; and so, on the 27th of March, 1882, .the claimant, by consent, filed an amendment to the original petition for stone delivered until the date thereof, intending to embrace the material furnished since the filing of the petition and up to the date of the amendment.
The same condition of things still existing between the parties as to the delivery of the material and the payment, the claimant, on the 16th of April, 1884, filed a second amendment, claiming the sum of $53,291.48, being the full amount of compensation for all the stone furnished, and upon which it is alleged insufficient payments have been made.
While this court regards many of the rules of the common law on the subject of pleading as necessary to the administration of judicial justice, it is not bound by the strict requirement of those rules as incident to the court of common-law jurisdiction.
The first petition, by its averments, covers every possible service which might have been rendered under any of the contracts or extension declared on, and as the amendments refer to, and by legal intendment must embrace, the allegations of that pleading, they in legal effect became a petition for material furnished since the former pleading; and such being the legal effect of the amended petitions, they necessarily cover all periods of the execution of the contract; so that no delivery of stone can fall beyond the period of six years before the amendments made to the petition.
For the purpose of deciding the difference between the parties we regard the petition and amendments as a consolidated cause of action, embracing the issue between the parties in relation to the price of the material furnished!under the contracts- and extensions.
Upon the subject of pleading in this court, the Chief Justice,, in the case of Little, administrator, v. United States, says: “The Supreme Court of the United States said, The Court of Claims in deciding upon the rights of claimants is not bound by any special rules of pleading’” (U. S. v. Burns, 12 Wall., 246), and this court has been steadily ruled by the spirit of that comprehensive and liberal expression. In Burke’s Case (13 C. Cls. R., 231), it is said: “ This court is created by Federal law, *17 with its seat in the Federal capital, with forms of proceeding prescribed by Federal law, for the recovery of money from the Federal Treasury.” The forms prescribed for it are neither taken from the common law or equity. They leave a large measure of freedom from the restraints of the special rules of pleading. Again, in Morse Arms Manufacturing Company's Case (16 C. Cls. R., 296): “ Proceedings are conducted here with a view of effecting substantial justice, irrespective of technical forms.” And again, in Brown v. The District of Columbia (17 C. Cls. R., 303): “ The court * * * seeks to administer justice between the contending parties by forms the most simple and convenient, and to make all such interlocutory orders as will lead to the doing of complete justice to all concerned, without prolonging litigation or subjecting either side of a controversy to unnecessary inconvenience and expense.”
The Supreme Court, in passing on the question of pleading in this court, said that "the forms of pleading in the. Court of Claims are not of so strict a character as to preclude the claimant from recovering what is justly due him upon the facts stated in the petition, although due in a different aspect from that in which his demand is conceived.” (Clark v. United States, 95 U. S. R., 543.)
The statute of limitations which is pleaded, and is always present as a jurisdictional inquiry, is therefore no legal defense to the claim of the petitioner for any material embraced in the •consolidated cause of action.
Other reasons might be urged against the application of the ■statute, growing out of the continuing character of the claim, but it is sufficient for the purpose of this case to hold that the ■comprehensiveness of the original petition and the legal effect of the amendments prevented the operation of the statute on any portion of the claim.
Adopting the construction given by the Supreme Court to a ■contract similar in its character, not regarding the receipts in full as concluding the claimant, and disapproving the application of the statute of limitations to any part of the claim, it is the judgment of the court that the claimant recover from the defendants the sum of $53,291.48.
Drake, Ch. J., sat in this case, but took no part in the decision.