Scofield, J.,
delivered the opinion of the court:
This claim was referred to the court May 13,1886, by the Committee on War Claims of the House of Eepresentatives, under the Act March 3, 1883 (22 Stat. L., 485), known as the Bowman Act.
This claimant filed her petition, in which she alleges that, at different times during the late civil war, the United States forces took from the decedent, in Fayette County, Tennessee, stores and supplies for the use of the Army, amounting in value to $5,130, itemized as follows :
4,000 pounds .fodder (receipted). $80
4 No. 1 mules (receipted) . 800
2 men’s saddles and bridles (receipted). 100
250 busliels com (receipted)...... 250
10,000 pounds fodder (receipted. 200
12 loads com and fodder (receipted).... 300.
75 barrels of corn, at $5. 375
4 mules, $800; 1 horse, $200. 1,000
1 saddle and bridle. 75
2 mules and bridles. 605
1,500 pounds fodder (receipted). 30
2 mules and bridles. 405
3,000 pounds fodder. 60
1 mule. 200
1 buggy and harness. 400
3£ bushels corn, 1,000 pounds fodder.,. 10
800 pounds bacon, $120 ; 4 head beef cattle, $120.. 240
Upon the trial of the case it appeared that the whole claim had' been presented to the Quartermaster-General under the Act July 4, 1864 (13 Stat. L., 381), which is as follows:
“ Sec. 2. That all claims of loyal citizens in States not in rebellion, for quartermaster’s stores actually furnished to the Army of the United States, and receipted for by the proper officer receiving the same, or which may have been taken by such officers without giving such receipt, may be submitted to the Quartermaster-General of the United States, accompanied by such proofs as each claimant can present of the facts in his case; and it shall be the duty of the Quartermaster-General to cause such claim to be examined, and, if convinced that it is just, and of the loyalty of the claimant, and that the stores have been actually received or taken for the use of and used *99 by said Army, then to report each case to the Third Auditor of the Treasury, with a recommendation for settlement.”
The provisions of this act were extended to the loyal citizens of th© State of Tennessee by the act March 28,1866.
The rule of evidence prescribed and followed by the Quartermaster-General in the examination of such claims, and of which all parties had public notice, was as follows:
“4th. Proof must» be furnished, as far as attainable, that the quartermaster’s stores or subsistence supplies mentioned have been actually used by the Army of the United States. This proof should, whenever practicable, consist of the certificate or affidavit of the officer who took the stores, or who ordered them to be taken, or who, after such tak ing, took them in charge, setting forth the fact of such taking, to what use the stores were applied, and whether or notthéy have been accounted for as required by the regulations of the Army; and if accounted for, upon what returns; or if not, the reason' for failing to account for the same; or, in ease the above proof is not attainable, the certificates of other officers, or the affidavit of a soldier, or some other credible witnesses, knowing the facts, set - ting forth by whom and for what purpose the property was taken, and to what use it was applied.”
Evidence in support of the whole claim was filed with the Quartermaster-General, and the whole claim was examined by that officer. After such examination, on June 11,1876, he made his decision and reported the case to the Third Auditor of the Treasury with a recommendation for settlement, of the following amounts, to wit:
4 mules, at $125 each. $500.00
330 bushels corn, at 50 cents... 165. 00
7,900 pounds fodder, at 75 cents per 100 pounds. 59.25
Total. 724.25
This recommendation was duly reported to Congress, and in the Act March 11,1878 (20 Stat. L., 505), the following appropriation was made:
“To Lucy E. Dowdy, executrix of the last will and testament of William P. Dowdy, deceased, $724.25, upon filing with the Secretary of the Treasury a duly authenticated copy of letters testamentary.”
A Treasury check was drawn for this amount, upon which the claimant, by indorsement, received the money. She gave no other receipt, and protested at the time that it was not accepted in satisfaction of the whole claim.
*100 These facts appearing, the defendants ash the dismissal of the case for want of jurisdiction by the court under the provisions of the Bowman Act.
It can not be held that the decision of the Quartermaster-General is in any degree conclusive of the claimant’s rights £ but the action of Congress thereon is certainly in the nature of approval and ratification. (Dodd’s Case, 21 C. Gis. B., 117 ,. BurwelVs Case, 22 id., 92.) If nothing more had been done, however, the question might possibly be resolved in favor of the claimant. But Congress went farther. A large number of private claims, arranged under the following provisional heading, was embraced in the same appropriation with the claimant’s:
“ Be it enacted, etc., That the Secretary of the Treasury be, and he is hereby, authorized and required to pay, out of any moneys in the Treasury not otherwise appropriated, to the several persons in this act named, the several sums mentioned herein, the same being in full for, and the receipt of the same to-be taken and accepted in each case as a full and final discharge-of, the several claims examined and allowed by the proper accounting officers since December seventh, eighteen hundred and seventy-five, under the second section of the act of Congress-approved June sixteenth, eighteen hundred and seventy-four.. (20 Stat. L., 500.)”
The insertion of the word “ allowed”in this provision somewhat obscures or confuses its meaning. Upon first view it would seem to limit the “ full and final discharge” to the amount appropriated and actually paid. But that construction, it will-be seen, renders the whole requirement unnecessary and effect-less ; for the amount “allowed” and the amount appropriated are exactly the same. It can hardly be supposed that Congress-intended to provide that the money paid should be a “ full and final discharge ” of exactly that sum; in other words, that the claimant should agree not to require the Government to pay the allowance twice over. “Allowed ” appears to have been used in the sense of adjudicated. Congress undoubtedly intended to provide that the payment of the allowance made upon the claim examined should be a full and final discharge of the entire-claim.
The fact that the money was received under protest, although no receipt was required except the necessary indorsement of the Treasury check, indicates that the claimant understood the? *101 statute as we understand it, and endeavored by a protest to avoid it.
No effect can be given to the protest. The act prescribed the only terms upon which payment could be tendered or received. It is very clear to the court that a. party accepting money under positive statutory conditions can not vary the conditions by merely protesting against them. Acceptance of ' the money is necessarily an agreement to the terms. (Cape Ann Granite Co. v. The United States, 20 C. Cls. R., 1; Savage v. The United States, 92 U. S. R., 382.)
Under our construction of the law the claimant is estopped from demanding more than she has already received.
Do these facts and legal conclusions take the case out of the jurisdiction of the court under the last clause in section 3 of the Bowman Act "1 That clause is as follows:
“Nor, shall the said court have jurisdiction of any claim against the United States which is now barred by virtue of the provisions of any law of the United States. (22 Stat. L., 485.)”
“ Barred by virtue of the provisions of any law of the United States” implies something more than a statute of. limitation as to time. It is broad enough to embrace any law, statute or common, recognized by the Supreme Court as the law of the United States, and which has the effect to prohibit a party from .proving, with a view to recovery, his original claim.
In Ford’s Gase (19 C. Cls. B., 519) the court said:
“ These words do not mean merely the provisions of any law ■of limitation, but of any law; nor does it mean any express law barring the claim in direct prohibitory terms, but any law which has the effect of barring it.”
In Dodds Gase (21 C. Cls. B., 117) the court said:
“ The Bowman Actdoes notrequire an express statutory bar; it is broadér in its scope, and deprives this court of jurisdiction •over any claim then barred by virtue of the provisions of any law of the United States.
These extracts are quoted with approval in Marshall’s Gase {21 C. Cls. B., 307) and in BurwelVs Gase (22 id., 92). The latter case is very similar in its facts to the case under consideration. There the claim was presented to the Commissioners of Claims. They allowed only part of it and reported the case to Congress. An appropriation was made for its pay *102 ment, with a condition that it should be accepted as' a full and final discharge of the claim presented to the Commissioners. The court dismissed the case for want of jurisdiction under the Bowman Act.
Following these precedents, the court decides that it has no> jurisdiction of the case at bar, and the same is therefore dismissed.