Drake, Oh. J.,
delivered the opinion of the court:
The facts in this case appear at large in the findings, and they need not be repeated here to any great extent.
The claimant presents a fourfold demand, as follows:
1. For an alleged balance of $5,460.78, due him for laying-14,755.23 square yards of concrete pavement;
2. For hauling a distance of 3,800 feet 4,715 cubic yards of excavation done in connection with the work specified in the contract;
3. For a further amount of work, ascertained by a supplemental measurement, $459; and
4. For lumber belonging to him, which the defendant took possession of, and'appropriated to its own use, $73.
In regard to the first item there is no dispute as to the facts. The claimant laid the 14,755.23 square yards of pavement, the price of which the defendant contends was $3 per yard, or $44,265.69 in all. On the other hand, the claimant contends that the price was $3.20 per yard, or $47,316.73 in all. The difference between the parties as to the price grows out of these words of the contract:
" It is further agreed that the said party of the second part shall receive the price paid by the board of public works for concrete pavement.”
■ The question then is, what was the price paid by the board of public works for concrete pavement” ?
The defendant contends that the price was fixed by the board at $3, by an order to that effect, entered on its minutes on the 16th of September, 1871.
For the claimant it is urged that the question is, not what the board had ordered more than four years before this contract was entered into, but what it had actually paid, at a later day, for such work ; and that it actually paid $3.20.
In our opinion, the claimant’s position on this point is the correct one, for various reasons.
*373 1. It does not appear that the claimant knew anything of the board’s order of September, 1871; and therefore it is not presumable that he had that order in his mind when he signed this contract.
2. From his being engaged in such work it may. without violence, be presumed that he did know what the board had been paying at the later period of the last quarter of 1873, and that, when he made this contract, that was in his mind.
3. It is not necessarily to be presumed that the District- Commissioners, when they made this contract, knew of that order of the board. But if they did know of it, they may fairly be supposed to have known also of the higher price paid in 1873; and if they knew both, it was their place to have specified in the contract that the price should be that fixed in the order, if they so meant. By not doing so they left room for the implication that they intended the claimant to receive the more recent “pricepaid” in 1873; for the paying of that piice then by the board might well induce the belief that the board, notwithstanding the order of 1871, had seen fit, in 1873, to disregard it — as it had a perfect right to do — and pay the higher price of the latter year.
4. The board’s order of 1871 was simply a rule for its own government, and could not, by the mere force of its adoption, bind any contractor. If it was intended to fix in the contract a price according to that order, it could only have been done by naming that price in the contract; or, if the contract was so uncertain in its terms as to authorize resort to extrinsic evidence to explain its meaning, then by showing that the price fixed in the order was, in fact, what both parties intended. There is nothing in the facts found tending to show that either of the parties even thought of the board’s order, much less intended that the price of this work should be fixed by it.
5. There is nothing in the findings to show that the board, after the adoption of that order, ever in a single instance made a contract for concrete pavement at $3 per yard. For aught that appears the order may have been a dead letter on the minutes of the board, from the day of its adoption till the board ceased to exist, on the 20th of June, 1874.
Upon these grounds we are quite clear in the conclusion that the claimant is entitled to the “price paid” by the board *374 in 1873 for concrete pavement; that, is $3.20 per square yard. In regard that work his claim stands thus:
For 14,755 23 square yards, ® $3.20. $47, 316 73
Less amount paid him on %. 41, 855 95
Balance due claimant . $5,460 78
As to the second item of claimant’s demand, namely, for hauling excavation, we can see no ground for a recovery. The findings show that the quantity he hauled does not appear. But if it did appear, still he could not recover, for these reasons: 1. That the contract does not bind the defendant to pay him for hauling; nor, indeed, does it mention at all the matter of hauling; and therefore, as the work could not have been done without hauling away the excavation, that must have been considered by both parties as embraced in the price agreed- to be paid him; and 2. That, so far as appears, the claimant never until he brought this suit advanced a claim for the hauling.
As to the third item, namely, $459, for a further amount due him on account of the contract work, ascertained by a supplemental measurement, there is no dispute as to the defendant’s liability for the work, but only as to the amount legally and justly due therefor. The measurement was made, and an account thereof stated, by the defendant’s engineer department, at $459; but it is found that that amount was thus made up :
The actual cost of the work, as appears by the sworn account of the claimant, approved by the overseer
of the defendant, amounts to.$277 75
To which was added 20%. 53 55
Total... $321 30
The reported sum of $459 is the amount of 3.65 District bonds, ® 70 cents on the dollar, that it would require to realize the sum of $321.30, i. e., $459 ® 70 c.=$321.30.
The question is,' whether this is an admissible way of stating the account.
From its being stated with an addition of 20% on the actual cost of the work, we conclude that the work was of a kind contemplated in the following clause of the contract:
. “For other work done under this agreement he shall receive twenty per cent. (20) additional upon the actual cost, to be determined by the original bills, attested by affidavits and verified *375 by the overseers, provided that payment be made in the hereinbefore mentioned bonds at their market value at the New York Stock Exchange at the date of each settlement.”
Now, the point is, whether the District Commissioners had lawful authority to make payment, in such a case, in 3.65 bonds “at their market value at the New York Stock Exchange,” when that value was below the par value of the bonds. If they had such authority, this clause of the contract might be sustained; if they had not, then it is clear that they could make no valid contract authorizing a contractor to be paid in those bonds at a rate below par. Let us see what their authority was.
Section 7 of the Act June 20,1874 (18 Stat. L., 116,120), provides as follows:
“The sinking-fund commissioners of said District are hereby continued; and it shall be the duty of said sinking-fund commissioners to cause bonds of the District of Columbia to be prepared, in sums of fifty and five hundred dollars, bearing date August first, eighteen hundred and Seventy-four, payable fifty years after date, bearing interest at the rate of three and sixty-five hundredths per centum per annum, payable semi-annually, to be signed by the secretary and the treasurer of said sinking-fund commissioners and countersigned by the comptroller of said District, and sealed as the board may direct.. * * * And the said'sinking-fund commissioners are hereby authorized to exchange said bonds at par for like sums of any class of indebtedness in the preceding section of this act named, including sewer taxes or assessments paid, evidenced by certificates of the auditing board provided for in this act.”
From this it appears that, the District Commissioners were not authorized to issue those bonds at all, but that the authority to issue them was vested solely in the sinking-fund commissioners. If so, what power had the District Commissioners to contract to pay in those bonds? But we pass that by, and treat the matter on the assumption that they had that power; and what do. we find? Why, that the sinking-fund commissioners had just one function in connection with the issue of those bonds, namely, to exchange them at par for like sums of any class of indebtedness named in the 6th section of that act. That was the limit and definition of their authority in this regard. They were merely to exchange bonds at par for like sums of other indebtedness. They had no legal right whatever to exchange them at any other rate. No contract, there *376 fore, made by the District Commissioners could bind or authorize them to exchange the bonds on any other basis than dollar for dollar. Such being the case, the clause in the contract which called for payment in bonds at a rate 'below par was a mere nullity, upon which the engineer department of the District had no lawful right to make the estimate of $459. Hence it follows that the amount to be allowed on account of the work ascertained by the .supplemental measurement is the actual cost of the work with twenty per cent, added thereto; which, as before stated, is $321.30.
As to the fourth item, for lumber of the claimant taken by the District authorities, there is no question of law; nor was there any dispute as to the facts, except in regard to the value of the lumber when it was taken. We find that value to have been $85; from which we deduct $40 due from the claimant to the defendant, as the unpaid price of 4,000 feet of the lumber, and allow the claimant the balance.of $45.
The judgment of the court is that the claimant recover $5,782.08, due and payable to him on the 12th of January, 1876, and $45, due and payable to him on the 31st of August, 1876.
Nott, J., was not present at the hearing of this case, and took no part in its decision.