Weldon, J.,
delivered tbe opinion of tbe court:
Tbe claimants brought suit to recover tbe sum of $14,748 due them, as they allege, for labor performed on tbe streets of Washington during the latter part of tbe year 1875.
They bad nine contracts with th'e defendant, under which they laid 73,741 square rods of concrete or vulcanite pavement, for which they have been paid at tbe rate of $3 per square yard, being twenty cents per yard less than the contract price, as they now insist. The agreements on which this suit is founded are numbered 762, 627, 270, 323, 620, 626, 346, 44, and 571.
No specific compensation is provided by the terms of the agreements, but reference is made to the amount “paid” and “established and paid” by the Board of Public Works for such work.
The contracts are similar in terms, except Nos. 44 and 346; in those two the word “ paid ” is used, while in all of the others the words “ established and paid ” are employed by the parties.
With that variation the contracts as to compensation are as follows:
“It is further agreed that the parties of the second part hereto shall receive the price established and paid by the Board of Public Works for the vulcanite concrete pavement.”
In order to develop fully the agreements it is necessary for us to incorporate into them so much of the contracts made by the Board of Public Works as indicate the price paid, “ or established and paid,” by that body for similar work during its administration.
In the contract ottered in evidence as establishing the price by the Board of Public Works, and which is set forth in finding xii, it is provided:
“ Also to take up and remove the wooden pavement on Pennsylvania avenue between Ninth and Tenth streets northwest, in the city of Washington, D. C. •, and to lay and put down the pavement known as and called the vulcanite concrete pavement on the carriage-way of said Pennsylvania avenue between said Ninth and Tenth streets northwest, in the city of Washington.
^ ^ ^
“Tenth. It is further agreed that the said parties of the second part shall receive the following prices'as full compensation for furnishing all the materials and labor which may be required *384 in the prosecution of the whole of the work to be clone under this agreement, and in all respects completing the same, to wit:
#*####*
“ Laying and putting down the said vulcanite concrete pavement, per square yard, three dollars and twenty ($3.20) cents, which shall include two (2) feet of grading, which said sums or prices the said party of the first part shall pay to the said parties of the second part as herein provided.”
The controversy grows out of that part of the contract which relates to the subject of grading, the claimants insisting that they are entitled to the $3.20 for having removed the wooden pavement, without reference to the fact whether any grading was done, and the defendant insisting that in order to entitle the claimants to the full measure of the agreement they must have done at least two feet of grading. The portion of the contract relating to the depth of grading was differently construed by the Board of Public Works and the Commissioners, the former, not regarding it as material that the contractor did not do two feet of grading, and the latter, by its engineer, determining the compensation as dependent upon the amount and depth of grading. Upon the latter theory accounts were made outfor the claimants from time to time by the engineer, and receipts given by them, upon the basis of such a construction; and the claimants themselves made out and presented to the Board of Audit two accounts based upon the Commissioners’ construction of the contract.
The claimants objected to that construction of the agreements, when the defendant first sought to establish it under the Commissioners, and presented the two accounts made out by them after their objections and protest against the action of the District engineer in construing the contracts as excluding the twenty cents where the two feet of grading was not done.
On the 28th of September, 1875, the parties had a controversy upon the subject of the construction of the contract as to the price, the claimants insisting that they were entitled to $3.20, and the engineer of the defendant insisting that, inasmuch as two full feet of grading was not done, the parties were only entitled to $3. They differed as to the construction of the agreements, the claimants making out their bill at the former price and the defendant estimating the work on the basis of the latter. The claimants on that date accepted the compensation resulting *385 from the defendant’s construction of the agreement and gave a receipt in full of the account, but protested that it was not as much as they were entitled to, and that it was not in full satisfaction of their claim.
It will be seen by reference to finding vi that up to the 28th of September the claimants had commenced work on contracts Nos. 702, 571, 620, and 346, and although contracts Nos. 346 and 626 were not actually reduced to writing and signed until the 14th of October, they were in fact let before the controversy between the parties as to the price on the 28th of September. The amount of work done under the contracts completed and commenced before said last-mentioned date is 36,928 yards, leaving of the 73,741 yards completed under all the contracts 36,813 yards commenced and completed after the 28th of September, 1875.
It is also insisted that on the 14th day of September, 1871, the Board of Public Works, by an order entered on its minutes, fixed the price to be paid by it per square yard for concrete pavement at $3, and therefore that became the price under the contracts made by the Commissioners of the District.
That precise question, on a similar finding, was before this court in the case Jonathan Taylor v. District of Columbia (17 C. Cls. R., 367). In that action it was held:
u Where the District Commissioners agree to pay for work the price previously “paid by the Board of Public Works f the contractor is not limited to the price fixed by the order of the Board of Public Works appearing on its minutes, but is entitled to the price actually paid by the. board. * * * An order of the former Board of Public Works fixing the price to be paid for concrete pavement was simply a rule for its own government, and could not by the mere force of its adoption bind a contractor.”
In all the contracts embraced in this controversy except Nos. 44 and 346 the words are “ established and paid ” instead of “ paid.” A price usually is established by parties in dealing with a given subject-matter, and ordinarily is the best evidence of its value, and must be taken as the best evidence of such value even though it may be contradicted by a declaration or act of one of the parties not communicated to the other. The ^findings show that one of the claimants, before the making of Ibhe agreements declared on, had been a large contractor with ■he Board of Public Works; that he had received $3.20 for *386 concrete pavement; and they do not show that he had any knowledge of the entry made on the books of the board on the 14th of September, 1871. Between the making of that order and the date of the agreements he had been paid $3.20 for work, without deduction on account of a deficiency of grading, and it was not the rule to deduct for such deficiency.
A rule or custom is established in law when it has become •tlie settled policy of conduct, and when by reasonable intendment it can be assumed that parties making a contract had it in contemplation. It then becomes a part of the contract, and may be invoked as defining the duties, and measuring the responsibilities of the parties.
“Previous and contemporary transactions and facts may be .very properly taken into consideration to ascertain the subject-matter of a contract and the sense in which the parties may hare used particular terms, but not to alter or modify the plain language they have used.” (Crawley v. United States, 96 U. S. R., 168; same case, C. Cls. R.)
As a result of such reasoning we must hold that in law there is no difference in the rights and obligation of the parties because of the difference in the words of the agreement.
But, aside from the act of the parties, the usage and custom of the Board of Public Works and the engineer of the Commissioners, what is the right of the claimants, as determined by the terms of the agreement, in relation to their compensation1? It is provided “ laying and putting down the said vulcanite concrete pavement, per square yard, $3.20, which shall include two feet of grading.”
The work to be performed is an entirety, for which the claimants are to receive an entire sum as compensation. By the terms of the contract the claimants are to do an-entire amount of work, which may include two feet of grading or may be less than that amount, and for which, with that contingency, they are to receive the sum of $3.20 per square yard. The entirety of the compensation is not dependent upon whether the grading is exactly two feet or falls below that amount.
The indication of the intent of the parties is that the claim-, ants were to do the necessary grading to the extent of two feetj and lay the pavement for an entire sum of $3.20 per square* yard. It is not a contract of distinct and separate parts, but® *387 contract of legal unity, embracing a variety of matter, but in contemplation of law an indivisible whole. The parties were to put down on the streets of Washington a certain kind of pavement and to receive a certain price, which price was taken in compensation for grading whatever was necessary to the extent of two feet. The $3.20 was intended to pay them for two feet of grading, provided that was necessary to be done in order to lay the pavement prodded by the contract.
Having ascertained and determined the meaning of the contract as to compensation, it by no means follows that the measure of such compensation is continuous and commensurate with the time and scope of the agreements. It is true that the terms expressed in the contract were the same before, at, and after the disagreement and dispute of the parties on the 28th of September, but their acts, while they do not change the terms of their agreement, may in law affect their interests, increasing or diminishing the responsibility and liability of the parties.
The officers of the District said to the claimants at the first estimate under the contracts let before that time, “ We will only pay you $3 per yard”; and while the claimants disagreed to that construction, so as to save vested rights, they afterward made agreements, commenced and finished similar work under other contracts with the District, without objection or protest, thereby in effect acquiescing in the construction of the engineer as to the compensation to be paid after said date.
It does not appear that they objected after the 28th of September, and their silence might, and we have no doubt was, accepted by the officers of the defendant as an agreement on their part to do the work at $3 per yard.
We do not, by the distinction we make in the time antecedent and subsequent to the 28th of September, construe the contract as meaning one thing before said date and another after that time; but predicate the difference in the compensation upon the ground that the claimants, under the facts and circumstances, are estopped from claiming for contracts let after the disagreement more than $3.
The protest and disagreement expressed by the claimants had reference to the payments made under a contract let before the 28th of September, but do not apply to contracts made ,fter that date.
*388 Indeed, it may be seriously questioned whether a protest was necessary to save their rights under agreements made before the 28th, as they had, by the terms of the agreements, a vested right to the full measure of their compensation; and if they received less than such compensation, without a new consideration for such concession, it would not bind them in law. (Baldwin v. United States, 15 C. Cls. R., 303; Bostwick v. United States, 94 U. S. R., 53; 12 C. Cls. R., 67; Child et al. v. United States, 12 Wall., 232; 7 C. Cls. R., 209; Comstock Case, 9 C. Cls. R., 114.)
It is elementary law, that an undertaking to do an act without any consideration, is a naked promise, and attaches no responsibility.
It does not appear distinctly from the finding when 626 and 346 were let, but by finding vi it will be seen that work was-commenced on them before the 28th of September, so that the date of the commencement of the work may be assumed as the day on which the parties agreed to the terms of the agreement,, which was on the 14th of October reduced to writing.
While the doctrine of estoppel is not favored as a defense, yet when the acts of parties have induced a certaiu result which cannot be disregarded without prejudice to the rights of others, it is a most wholesome rule of law, to hold, that a party cannot be heard, to deny what he has once asserted to be true,, and upon the truth of which others have been induced to act.
Whatever, therefore, may be the proper construction of contracts made before the 28th of September, after that date, by the act of the claimants, the compensation is as contended for by the defendant.
Adopting the theory of the law as announced by the opinion, it is the judgment of the court that the claimants recover the sum of [$7,385.60, and for that amount judgment will be entered, due and payable as of the 1st of January, 1876.
Davis, J., did not sit in this case and took no part in the decision.