"Weldon, J.,
delivered the opinion of the court:
This is a proceeding founded on the letter of the honorable Secretary of the Treasury, -dated March 18, 1899, addressed to the chief justice and judges of the Court of Claims. In that letter it is said:
“I have the honor to refer to your honorable court, under section 2, act of Congress approved March 3, 1883 (22 Stat. L., 485), otherwise known as the Bowman Act, to be proceeded in according to the provisions of said section, the claim of the State of blew Hampshire, aggregating $780,369.68* filed in the Auditor’s office March 22, 1898, for reimbursement of interest on moneys borrowed and alleged to have been expended in raising and putting into the field troops for the service of the United. States in aiding to suppress the rebellion. As stated by the Auditor, this claim appears to present controverted questions of fact and law, upon which it seems desirable to obtain the decision of the Court of Claims for the guidance and action of this Department.
• “The questions referred to are fully stated in the letter of the Auditor, dated January 3, 1899, a copy of which is herewith transmitted.”
The petition of the claimant is based upon the letter of the Secretary of the Treasury, and alleges in substance that the United -States became and was indebted to the State of New Hampshire on or about the 18th day of March, 1898, for monejrs paid out and expended by claimant, to and for the use and at the request of the defendants, in and for certain costs, charges, and expenses properly incurred by the said State in enrolling,' subsisting, clothing, supplying, arming, equipping, and paying the troops employed in aiding the United States to suppress the rebellion against the United States during the years 1861 to 1865, inclusive, in the sum of $780,369.68, which sum was then and there payable to the claimant, and for which the United States is indebted.
It is further alleged that upon the request and at the instance of the United States the said claimant did enroll, subsist, clothe, and supply said troops in and for the United States, and in so doing expended a large sum of money, to wit, *565 $780,36,9.68; that for tbe purpose of so aiding the United States the State of New Hampshire was compelled, in order to defray the expenses of said troops, to borrow at various times large sums of money upon its notes and bonds; that it was provided in said notes and bonds that the State should pajr interest on the same, and such promise was necessary and indispensable to enable the State to procure the loan; that in pursuance of the obligation of the State a large amount of interest, aggregating the first-named sum, was at different times paid by claimant; that the United States have not paid any of the said interest, and the same remains due and unpaid.
It is further alleged that on or about the 18th of March, 1898, the claimant presented to the Secretary of the Treasury its claim for reimbursement for sums paid as aforesaid, and not repaid to the State; that the Secretary of the Treasury has hitherto neglected to pay the same; that a like claim for reimbursement, growing out of interest, had been presented by the State of New York; that the United States refused to pay such claim upon the ground that it was interest, and therefore the United States was not responsible for the same; that on the 23d day of December, 1869, the claim of the State of New York was suspended by the action of the Department, subject to further decisions; that on the 7th of June, 1882, said claim on the question of the validity thereof was presented to the Attorney-General of the United States; that the Attorney-General, on the 23d of Jul-y, 1883, rendered an opinion to the effect that the claim did not come within the provisions of the act of July 27, 1861; that thereafter such proceedings were had in the Treasury in the matter of said claim; that on the 3d of January, 1889, the Secretary of the Treasury, under the provisions of section 1063 of the Revised Statutes, transmitted said claim with all the vouchers, papers, etc., to the Court of Claims; that the Court of Claims rendered a decision in favor of said State of New York; that from said judgment of the Court of Claims an appeal was taken to the Supreme Court; that the Supreme Court, on the 6th of January, 1896, rendered a judgment affirming the judgment of the Court of- Claims; that in consequence of the adverse rulings of the Secretary of the Treasury and the opinion of the Attorney-General it would have been unavail *566 ing- to have pressed said claim for payment; and because of those facts it is insisted that the claimant is not chargeable with such negligence and delay as would in law or equity bar its right to a recovery in this proceeding.
The questions referred to in the letter of the Secretary of the Treasury as being embraced in the Auditor’s report arc as follows, to wit:
“1. Have the accounting officers jurisdiction to entertain, adjust, and settle this claim on its merits únder the decision in the case of the United States v. New York (160 U. S. R., 598)?”
The Supreme Court in the case of New York has settled the liabilitji- of the United States, in determining that interest expended in payment for the use of the Federal Government is a legal claim against the United States under the Aet of Jioly%7, 1861 (12 Stat. L., 276), the substance of which is, that the Secretary of the Treasury is directed to pay to the governor of any State “the costs, charges, and expense properly incurred” by such State in enrolling, subsisting, clothing, supplying, arming, and equipping troops employed in aiding to suppress the insurrection against the United States, and the Joint resolution of March 8, 186H (12 Stat. L., 615), declaring the true intent and purpose of said statute.
The Supreme Court says:
“That the only inquiry is whether, within the fair meaning of the latter act, the words, ‘costs, charges, and expense properly incurred’ included interest by the State of New York on money borrowed for the purpose of raising arid supplying troops to be employed in suppressing the rebellion. We have no hesitation in answering this question in the affirmative.”
This decision of the Supreme Court in affirmation of the decision -of this court (26 C. Cls. R., 167) establishes beyond question the original liability of the United States to pay interest on borrowed money, as coming legitimately within that clause of the statute which provides reimbursement to the States for all moneys falling within “costs, charges, and expenses properly incurred.”
. It is further inquired:
“2. Is this claim for interest on money borrowed and expended in equipping troops so intimately connected with the *567 principal claim already allowed that the interest claim can be held to have been settled in the settlement of the principal claim on the doctrine that a claimant can not be allowed to split up his cause of action ? ”
The claim for interest, although it grows out of the same condition or subject-matter which was the basis of the claim, for money expended directly in the purchase of supplies and the ordinary expense of raising- and subsisting- troops, appears somewhat in its character, as shown by the act of the parties. The officials representing the United States in the case of the claim of New York, denied any liability upon the part of the United States for interest as it was then regarded, and that construction became the policy of the United States, so that bjr the action of one of the parties and the acquiescence or forbearance of the other party, the claim for interest, as a part of the expense incident to the agency of the State, became eliminated and remained so until the Court of Claims and the Supreme Court determined that the claim for interest was a part of the costs, charges, and expenses properly incurred.
Under the circumstances of this claim no presumption of payment can arise from the failure to present the claim, as the records of the National and State governments stand as a public record in contradiction of any presumed payment. No implication of a fraudulent purpose on the part of the State can originate, as the State could gain no advantage from withholding a part of its claim. Good faith and absolute truth abounds on both sides of the controversy.
It is insisted that the presentation and payment of the amount expended by the State directly in the expense of providing for troops operates as a discharge of the liability of the defendants for the expense of interest.
Estoppels are similar to forfeitures and penalties and are not favored defenses when the technicality of the estoppel can not be subordinated in equity. (Cape Ann Granite Co. v. The United States, 20 C. Cls. R., 1.) The inquiry embraced in this question is answered at length in the opinion of Judge Peelle in the case of Maine, decided at this term of the court, and to that opinion .and the numerous authorities cited we refer.
*568 3. '■‘In view of the long delay in presenting this claim is it a stale claim,” which the accounting officers shall not “entertain, adjust, or settle on its merits?”
The claim is not stale within the meaning of the law as decided by this court. In the case of Waddell (25 C. Cls. R., 323) this court had occasion to determine what constitutes a stale claim within the meaning of the law as applied to the obligations of the Government. It is said:
“A stale claim is one that has not been-presented for payment for a long period of time, during which the claimant himself knew his rights and created a presumption that the claim was never an honest and just one, and that he has been waiting until it was forgotten' by the alleged debtor and all evidence against it is lost or destroyed. Courts of equity usually follow the law and adopt the statute of limitations as . fixing the period beyond which delay requires explanation, and which unless satisfactorily accounted for will constitute a bar to demands. W e see no reason why the accounting officers may not rightly adopt the same rule.”
This claim is simply open to the objection that it is old, but its age is not attended with any of the adverse consequences which usually flow from the antiquity of the demand.
It is said in the report of the auditor of the court, in substance, that the evidence which ever existed and which could be used on the part of New Hampshire, or on behalf of the United States in respect to -the present claim on the date of filing with the Secretary of the Treasury is still accessible to the United States, and that no detriment has accrued to the United States by reason of the delay in presenting the claim.
That being true, the vital ingredient of a stale claim is wanting. It is not the mero delay which the law abhors, but it is the consequence which may flow to the interest of the other party as the result of such dolaju In the report of the auditor of this court it is said:
“Upon the foregoing facts, if the court should hold that, the State of New Hampshire is entitled to be reimbursed by the United States, the total interest and incidental charges and costs actually incurred by the State, on account of moneys hired and bonds issued to meet expenditures for war purposes for account of the United States, without any deductions, there would be due from the United States to New Hamp *569 shire, according to the detailed statement hereinbefore set out, the sum of 1780,369.68; but,- with the consent of counsel for both parties, the several sums on which interest, costs, and charges have been paid by the State on sums.expended for war purposes and allowed by the United States as proper charges, have been reduced, in the computation of interest, by the payments previously made to the State by the United States; and if the court shall hold that the State is entitled to reimbursement for interest so incurred, there will be due from the United States to the State of New Hampshire, as shown by the following statement, the sum of 1122,047.33.”
The auditor’s report resulting in the sum of §122,047.33 is based upon a calculation of interest which the court adopts as the correct rule in determining the costs, charges, and expenses properly incurred, with the exception that the direct tax should have been credited to the United States on the 30th June, 1862, instead of on the 12th January, 1867. A deduction of §17,079.39 should therefore be made from the above amount of §122,047.33, and the court accordingly finds that there is now due to the State of New Hampshire the sum of §104,967.94.